STATE OF NORTH CAROLINA v. WILLIAM LEE RASOR

No. 276A85

(Filed 2 June 1987)

1. **Criminal Law §§ 74.3, 92.5— codefendant's confession—inapplicability of Bruton rule—severance not required**

   The rule of *Bruton v. United States*, 391 U.S. 123 (1968), did not require the severance of defendant's trial from that of his codefendant where all references to defendant were removed from the codefendant's confession before its admission into evidence, and where the codefendant took the stand and was cross-examined by defendant as to all aspects of his testimony. N.C.G.S. § 15A-927(c)(1).

2. **Criminal Law § 92.5— severance not required by antagonistic defenses**

   The trial court did not abuse its discretion in denying defendant's motion to sever based on antagonistic defenses where the State presented plenary evidence of defendant's guilt apart from the codefendant's testimony, defendant had the opportunity to cross-examine the codefendant, and this was not a case in which the State relied on the testimony of each defendant to convict the other or in which the jury was likely to infer from the conflict that both defendants were guilty. N.C.G.S. § 15A-927(c)(2).

3. **Criminal Law § 162— waiver of objection—same evidence admitted without objection**

   Defendant waived his objection to evidence of a breaking and entering and larceny of firearms which occurred only a short time before the murder and armed robbery for which defendant was on trial when he undertook to explain the circumstances of the prior crimes. N.C.G.S. § 8C-1, Rule 404(b).

4. **Homicide § 21.5— first degree murder—premeditation and deliberation—sufficiency of evidence**

   There was sufficient evidence to support defendant's conviction for first degree murder based upon premeditation and deliberation where the codefendant's testimony tended to show that defendant was hiding in the back of a shed when the victim entered, that defendant came out of hiding after the codefendant pistol-whipped the victim, that defendant observed the victim struggling to stand up, and that defendant then picked up an ax and hit the victim repeatedly; defendant's own testimony established that upon his escape from a juvenile center he had firmly resolved to avoid recapture and that he heard a conversation between the codefendant and the victim during which the victim said that he would "call the law"; medical testimony tended to show that the victim was eighty-six years old, that he was 5 feet 7 inches tall and weighed about one hundred pounds, that he was in poor health and walked with the help of a cane, and that he suffered multiple traumatic head injuries caused by several blows; and police testimony tended to show that the shed walls and floor were splattered with blood, that the victim lay in a pool of blood, and that an ax found nearby was bloodstained.

**5. Robbery § 4.5— armed robbery—intent to steal—when formulated—continuous transaction**

When the circumstances of an alleged armed robbery reveal an intent to permanently deprive the owner of his property and a taking effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use of force can be perceived by the jury as constituting a single transaction.

**6. Robbery § 4.3— armed robbery—wounding of victim—subsequent taking of property**

The evidence was sufficient to support defendant's conviction of armed robbery where it tended to show a continuous transaction in which defendant critically wounded the victim and removed his wallet a short time afterwards.

**7. Criminal Law § 128.2— codefendant's sanitized confession—remarks by codefendant's counsel—denial of mistrial**

The trial court did not err in denying defendant's motion for a mistrial made when the codefendant's counsel objected to testimony concerning the codefendant's sanitized confession on the ground that "that's not his complete statement" since counsel's remark did not hint as to the contents of the excluded portions of the confession or intimate that those portions implicated defendant.

APPEAL by defendant from judgments sentencing defendant to life imprisonment and fourteen years, respectively, for convictions of murder in the first degree and robbery with a dangerous weapon, imposed by *Allen, J.*, at the 4 September 1984 session of Superior Court, BUNCOMBE County. Heard in the Supreme Court 9 March 1987.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, for the state.*

*Arthur E. Jacobson for defendant.*

MARTIN, Justice.

For the reasons stated below, we find defendant's assignments of error to be meritless and hold that he received a fair trial free from prejudicial error.

Viewed in the light most favorable to the state, the evidence presented at trial tended to show the following: Defendant, aged sixteen, and Roger Giles, aged fifteen, were juvenile offenders committed to the Juvenile Evaluation Center in Swannanoa. On 19 March 1984, defendant and Giles escaped from the center.

They spent that night and most of the next day in hiding but resolved that they would make it home without recapture, even if they had to kill themselves.

Late in the afternoon of 20 March, defendant approached the home of Garland Norton and asked to use the telephone. Defendant called home but no one would agree to pick him up. He inquired about using the phone again later, but Mr. Norton stated that he would be leaving soon and suggested that defendant borrow a neighbor's phone instead. Defendant reported back to Giles, noting the presence of guns in the house. The two then waited until Mr. Norton departed before breaking a window and entering the house. They remained in the house through the evening of 22 March.

During their stay defendant and Giles vandalized the house and made long-distance calls to their families and friends in an effort to arrange a ride home. They discussed holding Mr. Norton at gunpoint and forcing him to provide transportation, but they departed without attempting to carry out this plan. When Mr. Norton returned on 22 March, he discovered gunshot holes in the ceiling, the dismantled remains of several guns from his collection, and the words "red rum" scrawled on the bathroom mirror. Two .44-caliber handguns, a .22-caliber rifle, a 30-30 rifle, several hundred rounds of ammunition, and a hunting knife were missing.

After leaving the Norton house, defendant and Giles came upon a convenience store and discussed the possibility of holding the clerk at gunpoint and forcing her to drive them home. They waited outside for the store to close but abandoned the plan when a police officer pulled up to the store. They decided to spend the night in an outbuilding across the street from the store. This structure was located behind the home of an elderly couple, John and Georgia McMahan, and was used as a garage or storage shed. Defendant suggested that he could either break into the McMahan house or gain entry by asking to use the phone and pulling a gun. The next morning, 23 March, defendant and Giles entered the convenience store armed with .44-caliber handguns but too many customers came in and they retreated to the McMahans' shed.

In the early afternoon, Mrs. McMahan came outside to hang her wash and spotted Giles in the shed. She saw shotgun shells

and gunpowder on the shed floor and briefly questioned Giles about this. She then made an excuse to go back in the house, where she informed her husband of Giles' presence and phoned the police to report a prowler on the property. Mr. McMahan, aged 86, went out to the shed and spoke to Giles, unaware that defendant was hiding in the back of the shed.

When he saw the shotgun shells, Mr. McMahan told Giles he was going to "call the law." As he turned his back, Giles hit him in the head with the butt of a handgun. Mr. McMahan fell to the floor, and defendant emerged from hiding. As Mr. McMahan struggled to stand up, defendant bludgeoned him two or three times with a kindling ax, then took his wallet and handed the money in it to Giles.

When police arrived on the scene they found Mr. McMahan lying in a pool of blood on the shed floor, just inside the doorway. A bloody ax rested nearby. Giles was apprehended as he walked away from the shed. He had two knives, a loaded .44-caliber handgun, and $67, which he identified as "the old man's money," on his person. While in custody he twice confessed to hitting Mr. McMahan with a pistol but named defendant as the one who had beaten him with the ax.

Defendant was apprehended when the officer assisting Mr. McMahan heard a rattling noise from the back of the shed and saw the barrel of a 30-30 rifle pointing out towards him. He ordered defendant to put the rifle down. Defendant initially refused to do so, complying only after the officer threatened to shoot. Defendant had ammunition and a vial of gunpowder in his possession. The 30-30 rifle was both loaded and cocked. A .22-caliber rifle and a .44-caliber handgun, both loaded, were discovered in the immediate vicinity. These guns, as well as the one taken from Giles, were identified by Garland Norton as the weapons stolen from his house. Mr. McMahan's wallet was discovered about a foot from defendant's hiding place.

John McMahan died on 6 April. An autopsy revealed that he had suffered two skull fractures, multiple scalp lacerations, brain hemorrhaging, and a brain laceration an inch deep. These injuries were consistent with "several blows" to the head and were determined to be "the initiating factor in a chain of events leading to death."

Defendant and Giles were tried jointly. Defendant chose to present evidence at trial and testified on his own behalf. He admitted stealing Mr. Norton's guns and planning to kidnap the convenience store clerk. He denied hitting Mr. McMahan or taking his wallet. He stated that he had heard Giles' conversation with Mr. McMahan, followed by a "thump" and the sound of something hitting the floor. He claimed that he did not witness the assault because the view from his hiding place in the back of the shed was obstructed. He further denied having pointed a rifle at police before his capture.

Defendant was convicted of robbery with a dangerous weapon and murder in the first degree based on premeditation and deliberation. (As to Giles' fate, see *State v. Giles*, 83 N.C. App. 487, 350 S.E. 2d 868 (1986).) Defendant brings forward four issues for our consideration on appeal.

Defendant first contends that the trial court erred by granting the state's motion for joinder and denying defendant's motions to sever. N.C.G.S. § 15A-926(b)(2)(a) authorizes joinder of defendants where the state seeks to hold each defendant accountable for the same crimes; however, section 15A-927(c)(2) requires the court to grant severance whenever it is necessary to promote or achieve a fair determination of guilt or innocence. Whether defendants should be tried jointly or separately pursuant to these provisions is a matter addressed to the sound discretion of the trial judge. *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976). Absent a showing that defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed on appeal. *Id.*

Traditionally, a defendant objecting to joinder has been required to demonstrate prejudice by the joint trial. *State v. Finley*, 118 N.C. 1162, 24 S.E. 495 (1896). Defendant claims that the joint trial prejudiced him in that (1) Giles' extrajudicial confession, which also incriminated defendant, fell within the prohibitions of *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476 (1968), and (2) Giles' defense was antagonistic to his own.

[1] We first note that the *Bruton* ruling is not implicated under the facts of this case. In *Bruton*, the Supreme Court held that a non-testifying defendant's extrajudicial confessions may not be admitted at a joint trial because of the devastating effect upon the

confrontation rights of the other defendant, notwithstanding the trial court's instructions that the jury consider the statements only as against the declarant. 391 U.S. at 126, 20 L.Ed. 2d at 479. We have interpreted *Bruton* to require the exclusion of extrajudicial confessions at joint trials unless all portions which implicate defendants other than the declarant are deleted. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968). "If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately." *Id.* at 291, 163 S.E. 2d at 502. These requirements are codified under N.C.G.S. § 15A-927(c)(1). *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985).

Here the state complied with the statute by sanitizing Giles' extrajudicial statements. All references to defendant were removed, and redacted versions of the statements were offered into evidence through the testimony of Deputy Donald Cole, the officer to whom they had been made. However, even if the state had not sanitized the statements, no *Bruton* violation would have occurred. *Bruton* applies only to the extrajudicial statements of a declarant who is unavailable at trial for full and effective cross-examination. *Nelson v. O'Neil*, 402 U.S. 622, 29 L.Ed. 2d 222 (1971). Where the declarant can be cross-examined, a codefendant implicated by extrajudicial statements has been fully accorded his right to confrontation. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976), *reh'g denied*, 293 N.C. 259, 243 S.E. 2d 143 (1978); *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858 (1972); *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492. Here the declarant Giles took the stand and was vigorously cross-examined by defendant as to all aspects of his testimony. The trial court did not abuse its discretion in denying defendant's motion to sever based on *Bruton.*

[2] Nor are we persuaded by defendant's assertion that antagonistic defenses mandated severance in this case. Defendant claims that this case exemplifies the situation wherein "the State stands by and witnesses a combat in which the defendants attempt to destroy each other, much to the glee of the prosecutor." We warned of such dangers associated with antagonistic defenses at joint trials in *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied*, 446 U.S. 929, 64 L.Ed. 2d 282 (1980). However we also observed that the existence of antagonistic defenses alone does not necessarily warrant severance. The test under section 15A-927(c)(2) is whether the conflict in the defendants' respective

positions at trial is such that, considering all of the other evidence in the case, they were denied a fair trial. *Id.* at 587, 260 S.E. 2d at 640. Thus the focus is not on whether the defendants contradict one another but on whether they have suffered prejudice.

No prejudice results where the state presents plenary evidence of defendant's guilt, apart from the codefendant's testimony, and where defendant has the opportunity to cross-examine the codefendant. *See id.* at 588, 260 S.E. 2d at 641; *State v. Lake,* 305 N.C. 143, 286 S.E. 2d 541 (1982). Here the state brought forth evidence tending to show that defendant was an escapee from a state institution, that he was present at the murder scene, that he pointed a gun at police and refused to surrender until threatened with death, that his hiding place was surrounded with weapons, and that the victim's wallet lay within a foot of where he was apprehended. This was strong evidence to support a jury finding of defendant's guilt. We have already noted that defendant subjected Giles to rigorous cross-examination. Clearly this was not a case in which the state stood idly by and relied on the testimony of each defendant to convict the other or in which the jury was likely to infer from the conflict that both defendants were guilty. *State v. Nelson,* 298 N.C. at 588, 260 S.E. 2d at 641. We cannot say as a matter of law that the antagonistic defenses prevented the jury from rendering a fair and impartial verdict as to the guilt or innocence of each defendant. *State v. Lake,* 305 N.C. at 148, 286 S.E. 2d at 544. The trial court did not abuse its discretion in denying defendant's motion to sever based on antagonistic defenses.

[3] Defendant next contends that the trial judge improperly admitted evidence that defendant had committed offenses other than those for which he was being tried. Specifically, he objects to evidence that he and Giles broke into Garland Norton's house, vandalized the premises, and stole guns and ammunition. Defendant notes that he was charged with one count of felony breaking and entering and three counts of larceny of a firearm arising from his conduct at the Norton home. The trial judge denied the state's motion to join these charges with the murder and armed robbery charges for trial. Therefore, defendant argues, all references to crimes committed at the Norton home were extraneous to proof of murder and armed robbery and were admitted solely to prove

bad character, in violation of North Carolina Rule of Evidence 404(b). Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

The state insists that the evidence of breaking and entering and larceny was relevant because these crimes were part of a continuous chain of events beginning with the escape from the juvenile center and ending with the murder of Mr. McMahan. The state argues that these acts are intertwined with the murder and illustrate that defendant and Giles had embarked on a course of concerted illegal conduct and had acquired dangerous weapons with the intent to facilitate their flight at any cost. *See State v. Hunt*, 305 N.C. 238, 247, 287 S.E. 2d 818, 823 (1982) (evidence of connected crimes admitted to show "overall violent intent to pursue an evil course of action which eventually culminated in murder").

Under the facts of this case, we need not determine whether evidence of the other crimes was properly admitted for any purpose under Rule 404(b). Defendant himself testified extensively as to his conduct at the Norton home. He began by reading an eighteen-page statement he had made to the police, in which he admitted participation in the entry and vandalization of the home and the larceny of weapons. He provided more details of the incidents in response to direct and cross-examinations. Ultimately the jury heard the bulk of the contested evidence in defendant's own words during his case in chief. We have long held that when evidence is admitted over objection, and the same evidence is later admitted without objection, the benefit of the objection is lost. *State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982). Consequently we conclude that defendant waived his objection to the introduction of the evidence when he undertook to explain the circumstances of the Norton incident. *See State v. Maccia*, 311 N.C. 222, 316 S.E. 2d 241 (1984).

Defendant next contends that the trial court erroneously denied his motions to dismiss the charges at the close of the

state's evidence and at the close of all the evidence. In each instance, defendant moved for dismissal on the grounds that the evidence was insufficient as to each element of the offenses charged.

We note in passing that the denial of defendant's motion to dismiss at the close of the state's evidence is not properly at issue on this appeal. Defendant chose to offer evidence after his motion was denied and thereby waived appellate review of the trial judge's decision. N.C.G.S. § 15-173 (1983); *State v. Griffin*, 319 N.C. 429, 355 S.E. 2d 474 (1987). Thus, we need only address defendant's motion to dismiss at the close of all the evidence.

In considering a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). The evidence must be examined in the light most favorable to the state, and the state is entitled to every reasonable intendment and inference to be drawn therefrom. *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980). Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

We first consider the sufficiency of the evidence with respect to the murder charge. Murder in the first degree is the intentional and unlawful killing of a human being with malice, premeditation, and deliberation. N.C.G.S. § 14-17 (1986); *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). Premeditation means that the defendant formed the specific intent to kill for some length of time, however short, before the actual killing. *State v. Misenheimer*, 304 N.C. 108, 282 S.E. 2d 791 (1981). Deliberation means that the intent to kill was executed in a cool state of blood, without legal provocation, and in furtherance of a fixed design. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). No particular length of time is required for the mental processes of premeditation and deliberation; it is sufficient that the processes occur prior to, and not simultaneously with, the killing. *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 541 (1970).

[4] Premeditation and deliberation ordinarily must be proved by circumstantial rather than direct evidence. *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985), *cert. denied*, --- U.S. ---, 90 L.Ed.

2d 733 (1986). Some of the circumstances which may support an inference of premeditation and deliberation are: the brutality of the killing, the nature and number of the victim's wounds, the dealing of lethal blows after the victim has been felled and rendered helpless, and a lack of provocation on the part of the victim. *Id.* We conclude that substantial evidence of each of these circumstances was presented here.

Giles' testimony, viewed in the light most favorable to the state, tended to show that defendant was hiding in the back of the shed when Mr. McMahan entered, that defendant came out of hiding after Giles pistol-whipped Mr. McMahan, that defendant observed Mr. McMahan struggling to stand up, and that defendant then picked up the kindling ax and hit Mr. McMahan repeatedly. Defendant's own testimony established that upon his escape from the juvenile center he had firmly resolved to avoid recapture and that he heard the conversation between Giles and Mr. McMahan during which Mr. McMahan said he would "call the law." Medical testimony tended to show that Mr. McMahan was eighty-six years old, that he stood 5 feet 7 inches tall and weighed about one hundred pounds, that he was in poor health and walked with the help of a cane, and that he suffered multiple traumatic head injuries caused by several blows on 23 March. Police testimony tended to show that the shed walls and floor were splattered with blood, that Mr. McMahan lay in a pool of blood, and that an ax found nearby was bloodstained.

Taken as a whole, this evidence supports a reasonable inference that defendant inflicted multiple wounds upon an elderly and infirm victim, that the victim had already been felled and rendered helpless, that the wounds were of a particularly brutal nature, and that they were inflicted without legal provocation. The evidence also supports an inference that defendant formed an intent to kill during the time which elapsed between the victim's statement that he would contact the authorities and defendant's wielding of the ax. In light of this evidence, we hold that there was sufficient evidence to support defendant's conviction for murder in the first degree based upon premeditation and deliberation. Defendant's motion to dismiss the charge of murder in the first degree at the close of all the evidence was properly denied.

We next consider the sufficiency of the evidence with respect to the robbery charge. Armed robbery is the taking of personal property from the person or presence of another, by the use or threatened use of a dangerous weapon, whereby the victim's life is endangered or threatened. N.C.G.S. § 14-87(a) (1986); *State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981). Defendant maintains that there was insufficient evidence that he intended to commit armed robbery at the time of the assault on Mr. McMahan. He contends that all evidence points to an entirely different motivation for the use of the deadly weapon—to prevent Mr. McMahan from calling the police—and characterizes the removal of Mr. McMahan's wallet as, at most, an afterthought.

[5] This issue is controlled by the general rule most recently enunciated in *State v. Hope*, 317 N.C. 302, 345 S.E. 2d 361 (1986):

In this jurisdiction to be found guilty of armed robbery, the defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, *or be so joined with it in a continuous transaction by time and circumstances as to be inseparable.*

*Id.* at 306, 345 S.E. 2d at 364 (emphasis added). Where there is a continuous transaction, the exact time relationship between the violence and the taking is unimportant. *Id.; State v. Lilly*, 32 N.C. App. 467, 232 S.E. 2d 495, *disc. rev. denied*, 292 N.C. 643, 235 S.E. 2d 64 (1977). Thus, when the circumstances of the alleged armed robbery reveal an intent to permanently deprive the owner of his property and a taking effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use of force can be perceived by the jury as constituting a single transaction. *State v. Fields*, 315 N.C. 191, 337 S.E. 2d 518 (1985).

[6] Here, the evidence viewed in the light most favorable to the state tended to show a continuous transaction in which defendant critically wounded the victim and removed his wallet a short time afterwards. We hold that this evidence was sufficient to support defendant's conviction for armed robbery. *See State v. Handsome*, 300 N.C. 313, 266 S.E. 2d 670 (1980) (evidence of armed robbery sufficient, even though no threats or requests for money were made and the victim was shot first before the money was taken,

because the violence and the taking constituted a continuous transaction). Further, we reject defendant's contention that evidence of another motive for the attack is somehow exculpatory. Mixed motives for using force do not negate actions pointing undeniably to a taking inconsistent with the owner's possessory rights. *State v. Fields*, 315 N.C. 191, 337 S.E. 2d 518 (defendant's theory that the taking of the victim's property was merely an afterthought is not persuasive where the force and theft appear to be a continuous transaction). Defendant's motion to dismiss the charge of armed robbery at the close of all the evidence was properly denied.

[7]  In his final assignment of error, defendant contends that the trial court erred in denying his motion for mistrial. Defendant moved for mistrial on the grounds that remarks made by Giles' attorney during the testimony of Deputy Donald Cole raised impermissible inferences in the minds of the jurors.

Following an extensive voir dire on the admissibility of Giles' confessions, the trial court ruled that redacted versions of the statements would be allowed into evidence through the testimony of Deputy Cole. When the prosecutor began to question Cole as to Giles' redacted statement, the following exchange occurred:

Q. And what did [Giles] say?

A. He said that he had hit or slapped the old man in the back of the head with a gun and knocked him down.

MR. BELSER: Objection, Your Honor, on the grounds that that's not his complete statement.

THE COURT: Overruled.

Q. And did you ask anything further at that time?

A. I asked him why.

Q. And what was his response to that?

A. The Defendant Giles stated, 'Because he was going to call the law.'

MR. BELSER: Objection, Your Honor, because that's not his complete statement.

Defendant moved for a mistrial, objecting to Mr. Belser's indication that Giles' statement was incomplete. The trial judge denied the motion but cautioned Belser to refrain from embellishing his objections with improper commentary.

Whether a motion for mistrial should be granted is a matter addressed to the trial judge's sound discretion. A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict. *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622 (1982). Counsel's remark "that's not his complete statement" appears neutral on its face. It does not hint as to the contents of the excluded portions of the confession, nor does it intimate that these portions implicate defendant. Defendant's bald assertion that he was "forced into a defensive posture which obligated him to take the witness stand on his behalf and to read his statement to the jury" is unsupported. He has not shown that the impropriety in the present case was so egregious as to affect the jury's ability to render an impartial verdict. Under the circumstances, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

No error.