STATE OF NORTH CAROLINA v. TERRENCE EUGENE GALLOWAY AND
EDWARD ANTOINE RHEDDICK

No. COA00-807

(Filed 21 August 2001)

**1. Criminal Law— motion for a mistrial—inconsistent testimony—not the knowing use of perjury**

The trial court did not abuse its discretion in a prosecution for kidnapping, rape, and other offenses by denying defendants' motion for a mistrial based upon the State's alleged use of perjured testimony where there were inconsistencies between the testimony of the victim and the testimony of an accomplice who was allowed to plead to reduced charges in exchange for testifying for the State. The State offered both witnesses and left the inconsistencies to be resolved by the jury; the defendants did not show that the State knew that either the victim's or the accomplice's testimony was false.

**2. Criminal Law— prosecutor's argument—redacted statements**

The trial court did not abuse its discretion by denying defendants' motion for a mistrial in a prosecution for kidnapping, rape, and other offenses where defendants contended that the State in its closing argument improperly referred to portions of defendants' statements concerning prostitution that had been redacted to comply with *Bruton v. United States*, 391 U.S. 123. The State did not expressly mention any statement redacted by the parties and not all of the statements about prostitution were redacted. Furthermore, the victim's alleged consent and willful prostitution could be inferred from an accomplice's testimony.

**3. Criminal Law— prosecutor's argument—inferences**

The trial court did not abuse its discretion in a prosecution for kidnapping, rape, and other offenses by denying defendants' motion for a mistrial based upon the State's closing argument

where defendants pointed to inaccurate inferences that a defense theory was fabricated for trial and that defendants failed to present evidence that they were not present or did not assist in the commission of the crimes. Two defense attorneys had the opportunity to refute the State's inferences, the defendants' locations and actions could be inferred from the evidence and, while the State may have misled the jury as to when the defense theory of voluntary prostitution was devised, the victim's past conviction for prostitution, defendants' defense of alleged consent, and the defendants' locations and actions during the commission of the crimes were not excluded. The State's alleged inferences were harmless.

**4. Witnesses— credibility—cross-examination**

The trial court did not err in a prosecution for kidnapping, rape, and other offenses by not allowing defendants to fully attack the credibility of the victim. During cross-examination, the victim admitted that she was addicted to crack cocaine and had smoked crack on the day of these crimes; she denied an alleged suicide attempt; she admitted visiting psychiatrists, being involuntarily admitted to a "detox" center and leaving it against medical recommendation; evidence was admitted that she used several aliases and had been convicted of writing bad checks, driving with a revoked license, and prostitution; and she admitted that this was a difficult time in her life, with financial problems, depression, and her husband's recent imprisonment.

**5. Evidence— medical records—discharge notation—psychiatric history—not admissible**

The trial court did not err in a prosecution for kidnapping, rape, and other offenses by excluding the victim's medical discharge summary and other medical records. The notation of psychiatric history on the discharge summary was not admissible under N.C.G.S. § 8C-1, Rule 703 as the basis for an expert opinion because the doctor making the notation was an expert in surgery rather than psychiatry and admitted during voir dire that he had no personal knowledge or expertise on the challenged matters. The discharge summary statements were not admissible as business records under N.C.G.S. § 8C-1, Rule 803(6) because the court found the source of the doctor's statements to be unreliable. Moreover, any error that might have resulted from the omission of these statements was cured by the testimony of another emergency room doctor, who clearly identified the source of her

information. Other medical records were properly excluded because they contained inconsistencies and the doctor was not present to clarify them, or were in fact used by defendant.

### 6. Rape— first-degree—instructions—disjunctive

The trial court did not err by instructing the jury that one of the elements of first-degree rape was that the defendant employed or displayed a dangerous or deadly weapon or that defendant inflicted serious injury or that defendant aided and abetted one or more persons. Although defendant argued that it was impossible to determine whether the jury was unanimous, these acts establish an element of the offense and do not constitute a separate offense. Under *State v. Hartness*, 326 N.C. 561, the requirement of unanimity is satisfied.

### 7. Criminal Law— motion to sever—redacted statements from codefendants

The trial court did not err in denying a motion to sever in a prosecution for kidnapping, rape, and other offenses because of the admission of redacted statements of both defendants where the court sanitized the statements with assistance from the State and attorneys for both defendants and the deletions did not materially change the nature of either statement. N.C.G.S. § 15A-927(c)(2)b.

### 8. Homicide— attempted second-degree murder—conviction set aside

A conviction for attempted second-degree murder was set aside pursuant to *State v. Coble*, 351 N.C. 448, which held that no such crime exists in North Carolina.

Appeal by defendants from judgments entered 17 December 1999 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 17 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Daniel P. O'Brien and Joan M. Cunningham, for the State.*

*Lisa Miles for defendant-appellant Galloway.*

*Thomas S. Hicks, PLLC, by Thomas S. Hicks, for defendant-appellant Rheddick.*

STATE v. GALLOWAY

[145 N.C. App. 555 (2001)]

HUNTER, Judge.

Terrence Galloway ("defendant Galloway") and Edward Antoine Rheddick ("defendant Rheddick") appeal from judgments on jury verdicts finding them guilty of the rape, sexual offense, attempted murder, and kidnapping of Ronda Seaton ("the victim"). On appeal, defendants assign error to the trial court's: (1) denial of their motions for mistrial based on the State's alleged use of perjured testimony and the State's closing argument, (2) limitation of the cross-examination of the victim, (3) jury instructions on first-degree rape, and (4) denial of defendant Rheddick's motion to sever. After a careful review of the record and briefs, we find no error as to the trial court's rulings; however, as to defendant Rheddick, we vacate his conviction for attempted second-degree murder in light of our Supreme Court's decision in *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000).

The State's evidence tended to show that on 10 February 1998, defendant Galloway, defendant Rheddick, and Maurice Brown ("Brown") were riding around in a white Honda automobile with tinted windows, and the men had two guns in the automobile. At approximately 11:00 p.m., the three men saw the victim, and they stopped to pick her up. According to the victim's testimony, the men forced her into the car at gun point and abducted her against her will. However, Brown contradicted the victim's account, testifying instead that the victim voluntarily entered the car and agreed to exchange sex for money.

After searching for a location to stop, defendant Galloway drove the car onto a side road. When the car was parked, the victim testified that defendant Rheddick, holding a gun, ordered her out of the car and told her to undress. The victim began to comply, but before she could finish undressing, defendant Rheddick ripped off her shirt. Defendant Rheddick then pushed the victim into the car, forced her to perform oral sex on him, and thereafter engaged in vaginal intercourse. When defendant Rheddick was finished, the victim ran off into the woods. However, after some coaxing by the three men, she came back. Thereafter, defendant Rheddick threw the victim onto the hood of the car and placed a gun inside her vagina. Next, defendant Galloway ordered the victim to get inside the car. When the two were in the car, defendant Galloway forced the victim to perform oral sex on him, and thereafter engaged in vaginal intercourse.

Brown's testimony of defendants' actions when they arrived at the side road is fairly consistent with the victim's, however, Brown

STATE v. GALLOWAY

[145 N.C. App. 555 (2001)]

testified that first defendant Galloway, and then defendant Rheddick, had sex with the victim. After both defendants were finished, Brown got into the car with the victim. The victim was forced to perform oral sex and engage in vaginal intercourse with Brown, also. At this juncture, the victim got out of the car and again attempted to flee. However, the victim's attempt was thwarted as Brown pushed her down, defendant Galloway beat her with a two-by-two board with a bolt in it, and defendant Rheddick kicked her. After this attack, the victim lost consciousness; and the three men left the scene.

Defendant Galloway and defendant Rheddick were tried together in a joint trial during the 6 December 1999 Criminal Session of New Hanover County Superior Court, the Honorable W. Allen Cobb, Jr. presiding. At the conclusion of the trial, the jury found (1) defendant Galloway guilty of first-degree rape, first-degree sexual offense, attempted first-degree murder, and first-degree kidnapping, and (2) defendant Rheddick guilty of second-degree rape, second-degree sexual offense, attempted second-degree murder, and first-degree kidnapping. Judge Cobb entered judgments and sentenced both men to imprisonment. Defendants now appeal.

In their first assignment of error, defendants contend that the trial court erred when it denied their motions for mistrial. Specifically, defendants argue that the trial court abused its discretion in denying their motions for mistrial based on the State's (1) alleged use of perjured testimony, and (2) closing argument. However, we find no error.

We recognize that a trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1999). Whether a motion for mistrial should be granted is a matter which rests in the sound discretion of the trial judge. *State v. Blackstock*, 314 N.C. 232, 243, 333 S.E.2d 245, 252 (1985). The decision to grant or deny such a motion will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion. *State v. McGuire*, 297 N.C. 69, 75, 254 S.E.2d 165, 169-70 (1979).

[1] First, defendants argue that the trial court erred in denying their motion for a mistrial based upon the State's alleged use of perjured testimony. At trial, two versions of the victim's abduction were presented—the victim's and Brown's. As one of the versions was

obviously false, defendants assert that the State knowingly used perjured testimony.

Ordinarily:

> A prosecutor's presentation of known false evidence, allowed to go uncorrected, is a violation of a defendant's right to due process. The State has a duty to correct any false evidence which in any reasonable likelihood could affect the jury's decision. However, if the evidence is inconsistent or contradictory, rather than a knowing falsehood, such contradictions in the State's evidence are for the jury to consider and resolve.

*State v. Clark*, 138 N.C. App. 392, 397, 531 S.E.2d 482, 486 (2000) (citations omitted); *see also State v. Edwards*, 89 N.C. App. 529, 531, 366 S.E.2d 520, 522 (1988).

Initially, the victim testified that she was abducted at gun point. Additionally, the victim admitted, on cross-examination, that she had a 1997 conviction for prostitution—on that occasion, she approached a car, in the same neighborhood where defendants picked her up, and offered an undercover police officer sex in exchange for cash and a ride. Contrarily, Brown—who was allowed to plead to reduced charges of second-degree rape, second-degree sexual offense, and second-degree kidnapping in exchange for testifying for the State— testified that defendant Galloway said, "[l]et's get a prostitute"; the victim came to the passenger side of the car and discussed prostitution with defendant Galloway; the victim was not forced to get into the car; while performing oral sex on defendant Galloway, the victim asked about money; and defendant Galloway then put a gun to the victim's head. Otherwise, the victim's and Brown's accounts of the events are fairly consistent.

At bar, we find that defendants have failed to show that the State *knew* that either the victim's or Brown's testimony was false. Instead, the State offered both witnesses's testimony, and it was then for the jury to consider and resolve the inconsistencies. *See State v. Clark*, 138 N.C. App. 392, 397, 531 S.E.2d 482, 486. Accordingly, we hold that the trial court did not abuse its discretion in denying defendants' motion for a mistrial based on the State's use of the victim's and Brown's testimony.

[2] Secondly, defendants argue that the trial court erred in denying their motion for a mistrial based on the State's closing argument. Particularly, defendants make two separate contentions. First,

defendants allege that the State improperly referred to portions of defendants' statements that were redacted—the references to prostitution. Second, defendants allege that the State made improper inferences based upon those redacted statements—specifically, (1) defendants' defense that the victim consented and willingly prostituted herself was fabricated for trial, and (2) defendants failed to present evidence that they were not present or did not assist in the commission of these crimes.

It is well-settled that "[t]rial counsel are allowed wide latitude in jury arguments." *State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, 39-40 (1994). However, trial counsel may not make arguments "calculated to mislead or prejudice the jury." *State v. Riddle*, 311 N.C. 734, 738, 319 S.E.2d 250, 253 (1984). "[A]n attorney may not make arguments based on matters outside the record but may, based on 'his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.' " *State v. Wilson*, 335 N.C. 220, 224, 436 S.E.2d 831, 834 (1993) (quoting N.C. Gen. Stat. § 15A-1230 (1988)). "Ordinarily, the control of jury arguments is left to the sound discretion of the trial court and the trial court's rulings thereon will not be disturbed on appeal absent a showing of abuse of discretion." *State v. Jones*, 339 N.C. 114, 158-59, 451 S.E.2d 826, 850 (1994).

After being arrested, defendants both made statements to the police; each defendant's statement implicated the other defendant and minimized their own involvement. At trial, a hearing was held and portions of defendants' statements were redacted in an effort to comply with *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968) (holding that the admission of a codefendant's statements against interest that also incriminated the defendant violated the defendant's Confrontation Clause rights where the declarant was unavailable for cross-examination). Then, during the closing argument, the State argued:

Curious thing about this whole prostitution thing is, we've got our initial statements and nobody said, I'm the one that hired the prostitute. Right. If she was there hooking, who did she hook for? He denied it. He denied it. Maurice Brown denied it.

There is another thing you need to understand. This first statement they made was before they had lawyers, too . . . . [T]hey've got lawyers who say no, no, no, denying everything is not going to do you any good. We've got DNA evidence. You can't deny everything, so we've got to come up with a new lie and the

**STATE v. GALLOWAY**

[145 N.C. App. 555 (2001)]

new lie was she wanted to do it. She wanted to get in the car. She wanted you to go out in the woods with her. She wanted you to bust her up side the head with that club. That's the new lie.

. . .

If one of them did it and they are all acting in concert or they are all aiding and abetting, then they're all guilty, *and there's nobody that said they weren't all acting together. Nobody has said one of them went over here, so and so went over here.* Maurice Brown didn't say it, Galloway didn't say it, Rheddick doesn't say it. *Nobody says, I went over here and they did their thing. I went there. I wasn't a part of what nobody said.*

In denying defendants' motion for a mistrial based on the State's closing argument, the court made the following findings of fact:

[T]hat any misstatement that the prosecutor made in his final argument to the jury could be addressed by at least two defense lawyers.

[E]ach defense lawyer did, in fact, address the issue of consent and whether or not she had prior convictions for prostitution.

Based on these findings, the trial court concluded "that nothing in the prosecutor's final argument resulted in substantial and irreparable prejudice to either defendants."

Here, it is clear that the State did not expressly make mention of any statement redacted by the parties. As to defendants' allegation that the State's references to prostitution were improper, not all statements regarding prostitution were in fact redacted. For instance, the following was left in defendant Galloway's statement: "[the victim stated] [y]'all going to pay me right?" "So, as she unzipped my pants she was like well y'all are still going to pay me? I want about thirty-thirty five dollars." Furthermore, the victim's alleged consent and willful prostitution could be reasonably inferred from Brown's testimony. Therefore, the trial court did not abuse its discretion in denying defendants' motion for a mistrial based on the State's references to prostitution in the closing argument.

[3] As to the State's alleged improper inferences—(1) defendants' story that the victim willingly prostituted herself was a new defense fabricated for trial, and (2) defendants failed to present evidence that they were not present or did not assist in the commission of these crimes, the inferences, although inaccurate, were nevertheless harm-

less and did not likely affect the jury's decision. Two defense attorneys had the opportunity to refute the State's alleged inferences, and both defense attorneys argued that the victim was a prostitute and consented to the sexual activity. Additionally, defendants' locations and actions during the commission of these crimes, again, can be reasonably inferred from Brown's testimony, as well as other evidence of record. Therefore, the State's closing argument was not so grossly improper as to require a new trial, in light of the convincing evidence indicating defendants' guilt.

Moreover, defendants' reliance on *State v. Bass*, 121 N.C. App. 306, 465 S.E.2d 334 (1996) is misguided. In *Bass*, an indecent liberties and first-degree sexual offense case, this Court found that where evidence that the victim had been previously abused by the defendant was excluded, it was prejudicial error and misleading for the prosecutor to argue during closing arguments that there was an absence of evidence of the victim's prior sexual abuse. *Id.* Here, the State may have misled the jury as to when defendants' defense was devised, but unlike *Bass*, evidence of the victim's past conviction for prostitution, defendants' actual defense of the victim's alleged consent and voluntary prostitution, and defendants' locations and actions during the commission of the crimes were not excluded. Therefore, the State's alleged inferences *sub judice* were harmless, and *Bass* is distinguished. Accordingly, we hold that the trial court did not abuse its discretion in denying defendants' motion for a mistrial based on the State's closing argument.

[4] Next, defendants assign error to the trial court's limitation of the cross-examination of the victim. Particularly, defendants argue that the trial court committed prejudicial error in failing to allow them to fully attack the credibility of the victim during their cross-examination. We disagree.

"It is a well-established principle that an accused is assured the right to cross-examine adverse witnesses." *State v. Herring*, 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988). "Generally, the scope of permissible cross-examination is limited only by the discretion of the trial court and the requirement of good faith." *State v. Locklear*, 349 N.C. 118, 156, 505 S.E.2d 277, 299 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). In other words, "[t]he scope of cross-examination . . . is within the sound discretion of the trial court, and its rulings thereon will not be disturbed absent a showing of abuse of discretion." *Herring*, 322 N.C. at 743, 370 S.E.2d at 370. Furthermore:

While specific instances of drug use or mental instability are not directly probative of truthfulness, they may bear upon credibility in other ways, such as to "cast doubt upon the capacity of a witness to observe, recollect, and recount, and if so they are properly the subject not only of cross-examination but of extrinsic evidence . . . ."

*State v. Williams*, 330 N.C. 711, 719, 412 S.E.2d 359, 364 (1992) (quoting 3 *Federal Evidence* § 305, at 236).

At bar, defendants argue that the trial court prevented them from offering evidence that would cast doubt on the victim's credibility, such as her history of drug addiction, an alleged suicide attempt, and her psychiatric history. However, during cross-examination, the victim admitted that she was addicted to crack cocaine, and she had smoked crack the very day of these crimes. Additionally, the victim was asked about an alleged suicide attempt, when she allegedly attempted to cut her wrists, and she denied it. Moreover, as to the victim's psychiatric history, the victim admitted to visiting psychiatrists. She further admitted that she was involuntarily committed into a "detox" center, which she left against medical recommendation.

Also, evidence was presented that the victim, who used several aliases, had been convicted of writing bad checks, driving while her license was revoked, and prostitution. Moreover, during this point in her life, the victim admitted that she was going through a difficult time—financial problems, depression, and her husband's recent imprisonment. Therefore, we find that defendants were afforded an adequate opportunity to attack the victim's credibility.

[5] Nevertheless, defendants argue that they should have been allowed to more fully probe the victim's psychiatric history and alleged suicide attempt. Particularly, defendants contend that they should have been given the opportunity to present medical evidence of the victim's history, i.e., the medical opinions and records prepared by Dr. Thomas Clancy, Dr. Kevin Reece, and Dr. Thomas Mathews.

First, defendants argue that certain portions of the victim's discharge summary prepared by Dr. Clancy should not have been excluded. In preparing the discharge summary, Dr. Clancy, who examined the victim the morning after her attack, noted that the victim had a "[p]sychiatric history including anti-social behavior, substance abuse, substance addiction, [and] uncooperativeness"

and was "[w]ell-known to The Oaks [a psychiatric facility] for previous psychiatric history." At trial, the court . excluded these two statements, but allowed Dr. Clancy to testify as to the victim's "uncooperativeness."

Defendants first attempt to admit the statements as Dr. Clancy's medical opinion under N.C. Gen. Stat. § 8C-1, Rule 703 (1999). Under Rule 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

"A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence." *State v. Wade*, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979). While this rule gives a party the right to vigorously cross-examine an expert regarding the underlying facts upon which he bases his opinion, it is the duty of the trial judge to exercise sound discretion in controlling the nature and scope of the cross-examination in the interest of justice and in confining the testimony within the rules of competency, relevancy, and materiality. *See McClain v. Otis Elevator Co.*, 106 N.C. App. 45, 415 S.E.2d 78 (1992).

At bar, Dr. Clancy was qualified as an expert in surgery, with a special association in emergency care and critical care—not psychiatry. During *voir dire*, Dr. Clancy admitted that he was not a behaviorist and he had no personal knowledge or expertise on the challenged matters in the victim's discharge summary. Therefore, we hold that the statements were not inherently reliable or the type reasonably relied upon by experts in Dr. Clancy's particular field— surgery. Hence, the trial court properly excluded these statements under Rule 703.

Defendants next attempt to admit Dr. Clancy's discharge summary statements as a business record under N.C. Gen. Stat. § 8C-1, Rule 803(6) (1999). Under Rule 803(6), business records, including medical records, are admissible, "unless the source of information or

the method or circumstances of preparation indicate lack of trustworthiness." Moreover, "[t]he simple fact that a record qualifies as a business record does not necessarily make everything contained in the record sufficiently reliable to justify its use as evidence at trial." *Donavant v. Hudspeth*, 318 N.C. 1, 7, 347 S.E.2d 797, 801 (1986). "Trustworthiness is the foundation of the business records exception." *State v. Miller*, 80 N.C. App. 425, 429, 342 S.E.2d 553, 556 (1986).

During *voir dire*, Dr. Clancy was questioned regarding the source of the two statements, and he replied:

> I don't recall, now. Her mother indicated that she had had some problems in the past, and we had a record indicating that she had been in The Oaks prior to this admission, and that information was probably . . . was probably culled from those records and that previous admission from her mother.

Subsequently, the trial court found that the source of Dr. Clancy's statements was unreliable. Therefore, when, as here,

> the trial judge determines on *voir dire* that the source of the physician's statement is in fact unreliable, he may exclude the statement as evidence for any purpose. If the opinion of the physician testifying as an expert is based solely on the unreliable statement, the physician should not be allowed to state the opinion. . . .

*Donavant*, 318 N.C. 1, 26, 347 S.E.2d 797, 812. Based on the unreliability and the lack of trustworthiness of the source of Dr. Clancy's statements, the trial court did not abuse its discretion in denying their admission.

Furthermore, any error that might have resulted from the omission of Dr. Clancy's statements was cured by the testimony of Dr. Monique Minor, the victim's emergency room physician on the night of her attack. During cross-examination, Dr. Minor was questioned regarding a discharge summary she assisted in preparing. Unlike Dr. Clancy, Dr. Minor clearly identified the source of her information as the victim's mother. Then, in her testimony, Dr. Minor confirmed that the victim was suicidal about three weeks prior to the attack, and the victim had been admitted to "The Oaks."

Next, defendants argue that the trial court improperly excluded medical records prepared by Dr. Kevin Reece. However, upon an

STATE v. GALLOWAY

[145 N.C. App. 555 (2001)]

examination of the records, several inconsistencies, such as names, dates of birth, medical record numbers, and symptoms, were found. As a result, the trial court ruled that the records were inadmissible based on the inconsistencies and the fact that Dr. Reece was not present to clarify them. We note that defendants subpoenaed Dr. Reece, but he was never called to testify. Therefore, the source, method, and circumstances of preparation surrounding the information in Dr. Reece's documents indicated a lack of trustworthiness. Thus, the trial court again did not abuse its discretion in excluding these records under Rule 803.

Finally, defendants' challenge as to the medical records prepared by Dr. Thomas Mathews is meritless. Upon a review of the record, we find that the trial court allowed the defense to use the record prepared by Dr. Mathews to cross-examine the victim, and the defense did in fact make use of Dr. Mathews' record. Accordingly, we hold that defendants were afforded an adequate opportunity to cross-examine and attack the credibility of the victim. Thus, defendants' assignment of error is overruled.

[6] In their third assignment of error, defendants challenge the trial court's instructions on first-degree rape. Specifically, defendants argue that the first-degree rape jury instruction that the trial court used improperly permitted defendants' convictions by less than a unanimous verdict. However, we disagree.

During the charge to the jury, the trial court used the North Carolina Pattern Jury Instruction for first-degree rape (207.10). The elements of first-degree rape specified in the pattern jury instructions are identical to those elements set out in the statute. *See* N.C. Gen. Stat. § 14-27.2 (1999). At trial, the court charged,

for you to find each of the defendants guilty of first degree rape, the State must prove four things beyond a reasonable doubt. First, that the defendant engaged in vaginal intercourse with the victim. . . .

Second, that the defendant used or threatened to use force sufficient to overcome any resistance the victim might make. . . .

Third, that the victim did not consent and it was against her will. . . . *And fourth, that the defendant employed or displayed a dangerous or deadly weapon, or that the defendant inflicted*

> *serious personal injury upon the victim or that the defendant was aided and abetted by one or more persons. . . .*

(Emphasis added.)

Defendants argue that the trial court's disjunctive phrasing as to the fourth element constituting first-degree rape rendered the verdict potentially nonunanimous. As a result, defendants assert that the jury could have split in its decision regarding which act constituted the offense, thus making it impossible to determine whether the jury was unanimous in its verdict.

In North Carolina, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24. In our state, two lines of cases have developed regarding jury unanimity and disjunctive instructions: (1) *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), and (2) *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). The *Diaz* line,

> establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense.

*State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991) (emphasis in original). Contrarily, the *Hartness* line, "establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." *Id.* at 303, 412 S.E.2d at 312 (emphasis in original).

Here, as to the fourth element of first-degree rape, the instructions were in the disjunctive—namely, defendants could be found guilty of first-degree rape if they "employed or displayed a dangerous or deadly weapon, *or* . . . [they] inflicted serious personal injury upon the victim *or* . . . [they were] aided and abetted by one or more persons." These acts establish an element of the offense, and do not, by themselves, constitute a separate offense. Furthermore, our Supreme Court has found that a trial court's instruction that defendants could be found guilty of rape and sexual offense if they employed a deadly weapon *or* were aided and abetted was proper. *See State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986), *overruled on other grounds by*

*State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997). Thus, we hold that the case *sub judice* is controlled by *Hartness*.

In the present case, defendants' reliance on *Richardson v. United States*, 526 U.S. 813, 143 L. Ed. 2d 985 (1999), is not well founded. First, *Richardson* deals expressly with crimes under a federal statute, 21 U.S.C.S. § 848. Second, while *Richardson* holds that a jury must unanimously find that the government proved each *element of a federal crime* to convict, the United States Supreme Court, in arriving at its decision, focused primarily on § 848 and how (1) a jury must unanimously agree not only that a defendant committed some "continuing series of violation," but also about which specific violations make up that "continuing series," and (2) "violations" in a continuing criminal enterprise refer to elements rather than means. *See id.* Here, the jury instructions clearly did not deprive defendants of their right to be convicted by a unanimous jury. Therefore, we reject this assignment of error.

**[7]** In the next assignment of error, defendant Rheddick assigns as error the trial court's denial of his motion to sever based on the admission of the redacted statements. Again, we find no error.

Under N.C. Gen. Stat. § 15A-927(c)(2)b (1999), the trial court must grant a severance upon a defendant's motion if "it is found necessary to achieve a fair determination of the guilt or innocence of that defendant." "Whether defendants should be tried jointly or separately . . . is a matter addressed to the sound discretion of the trial judge." *State v. Rasor*, 319 N.C. 577, 581, 356 S.E.2d 328, 331 (1987). "Absent a showing that defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed on appeal." *Id.* At bar, defendants did not initially object to their trials being joined. Then, at the close of the State's evidence, well into the trial, defendants made their motion to sever based on the introduction of their redacted statements. Subsequently, the trial court denied the motion.

In the past, this Court has found that where deletions from a defendant's statement of references to a co-defendant do not materially change the nature of a defendant's statement, a defendant is not prejudiced by admission of the sanitized statement. *See State v. Giles*, 83 N.C. App. 487, 350 S.E.2d 868 (1986). Here, the trial court with the assistance of the State and both defendants' attorneys complied with *Bruton* and sanitized the statements. Further, the deletions do not materially change the nature of either defendant's statement—

both statements acknowledge that the victim was in the car, a sexual assault took place, and the victim was beaten. Thus, defendants were not prejudiced by the admission of the redacted statements. As such, we hold that the trial court did not abuse its discretion in denying defendant Rheddick's motion to sever.

**[8]** Finally, we examine defendant Rheddick's conviction and sentence for attempted second-degree murder. In light of our Supreme Court's recent holding in *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000), "a crime denominated as 'attempted second-degree murder' does not exist under North Carolina law." *Id.* at 453, 527 S.E.2d at 49. Accordingly, we vacate defendant Rheddick's conviction for attempted second-degree murder.

In the record, defendants preserved approximately one hundred additional assignments of error. As defendants fail to argue them in their briefs, we deem those not argued abandoned. N.C.R. App. P. 28(b)(5).

In light of all the foregoing, we hold that defendants received a fair trial, free from prejudicial error. However, as to defendant Rheddick, we vacate his conviction for attempted second-degree murder.

No error as to defendant Galloway.

No error in part, vacated in part as to defendant Rheddick.

Judges MARTIN and HUDSON concur.