STATE OF NORTH CAROLINA v. KENNETH WADE EVANS AND DEVRONNE J. GILLIS

No. 104A96

(Filed 6 June 1997)

**1. Criminal Law § 889 (NCI4th Rev.)— noncapital first-degree murder—jury not reaching verdict—additional instructions**

There was no error in a noncapital first-degree murder prosecution in the court's instructions to the jury on failure to reach a verdict where defendant contended that a statement by the court was in violation of N.C.G.S. § 15A-1235, but defendant did not object at trial. Reading the instructions as a whole, the court twice admonished jurors not to compromise their convictions or do violence to their consciences; the substance of the instructions was to ask the jury to continue its deliberations and the instructions were not coercive.

**Am Jur 2d, Trial §§ 1580, 1581, 1585, 1588.**

**2. Criminal Law § 805 (NCI4th Rev.)— noncapital first-degree murder—acting in concert—instructions**

The trial court did not err in its instructions on acting in concert in a noncapital first-degree murder prosecution where defendants contended that the instructions permitted the jury to convict defendants without determining that each possessed the requisite *mens rea* to commit premeditated and deliberate murder. Since the crime was committed prior to 29 September 1994, the certification date of *State v. Blankenship*, 337 N.C. 543, the application of acting in concert as enunciated in *State v. Erlewine*, 328 N.C. 626, and reinstated in *State v. Barnes*, 345

N.C. 184 does not violate the constitutional *ex post facto* prohibitions. Moreover, the instructions comport with the *Blankenship* mandate in that the portions of the instructions which contain the phrase "or someone acting in concert with defendant" related only to the general intent elements of first-degree murder and *Blankenship* was inapplicable to general intent crimes. As to the specific intent elements of first-degree murder, the instructions did not permit the jury to convict defendants without determining that each possessed the *mens rea* to commit first-degree murder. Moreover, the use of the conjunctive in referring to defendants on the specific intent elements of the offense did not constitute error.

**Am Jur 2d, Trial §§ 1255-1257.**

3. **Homicide § 478 (NCI4th)— noncapital first-degree murder—instructions—transferred intent**

There was no plain error in a noncapital first-degree murder prosecution where defendant contended that the trial court's instructions on transferred intent were erroneous in that they permitted the jury to convict him based on the intent of his codefendant, but, viewed as a whole, the transferred intent instruction did not detract from the instructions on the elements of the crime.

**Am Jur 2d, Homicide §§ 499, 507.**

4. **Criminal Law § 826 (NCI4th Rev.)— noncapital first-degree murder—requested instruction—character for peacefulness—not given—no prejudice**

There was no prejudicial error in a noncapital first-degree murder prosecution where the trial court denied defendant Gillis's proffered instruction on his character for peacefulness. Given the substantial evidence of his participation in the crime, Gillis cannot show that he was prejudiced by the omission of this instruction.

**Am Jur 2d, Homicide § 503; Trial §§ 1338, 1340, 1341, 1344.**

5. **Homicide § 374 (NCI4th)— noncapital first-degree murder—acting in concert—sufficiency of evidence—defendant not merely present**

The trial court did not err in a noncapital first-degree murder prosecution by submitting the case against defendant Gillis to the

jury even though defendant contended there was no evidence beyond mere presence to support a conviction. The trial testimony tended to show that Gillis was robbed of his necklace by three men in the parking lot of a club; Gillis immediately thereafter conferred with Evans, who had a gun and opened fire on the three men; Gillis and Evans followed the three men to another club; Gillis and Evans drove by the club, with Evans hanging out the window and shooting; according to one witness, Gillis was driving the car; and the victim, a bystander, was shot and killed while running toward the doorway of the club. The evidence was sufficient to support a reasonable inference that Gillis and Evans killed the victim pursuant to a common plan to kill the three men who had robbed Gillis and that Gillis was not merely present at the scene.

**Am Jur 2d, Homicide §§ 445, 507.**

6. **Criminal Law § 325 (NCI4th Rev.)— noncapital first-degree murder—multiple defendants—severance of trial denied—no error**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant Evans' motion to sever his trial from that of codefendant Gillis. There was no *Bruton* violation because Gillis took the stand, testified, and was subject to cross-examination. The principles set out in *Bruton* apply only to the extrajudicial statements of a declarant who is unavailable at trial for full and effective cross-examination; where the declarant takes the stand and is subject to full and effective cross-examination, a codefendant implicated by extrajudicial statements has not been deprived of his right to confrontation. Neither was there a violation of due process and N.C.G.S. § 15A-927 because there was plenary evidence, irrespective of Gillis' statements, that Evans was involved in the shooting. Additionally, any error in the admission of these statements was cured by a limiting instruction.

**Am Jur 2d, Trial §§ 157, 158, 172.**

**Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment entered by Rousseau, J., at the 18 September 1995 Criminal Session of Superior Court,

Forsyth County, upon jury verdicts of guilty of first-degree murder. Heard in the Supreme Court 12 September 1996.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant Evans.*

*J. Clark Fischer for defendant-appellant Gillis.*

PARKER, Justice.

Defendants, Kenneth Wade Evans and Devronne Jabbar Gillis, were tried noncapitally upon proper bills of indictment charging defendants with the murder of Willeana Goodman Martin. The jury found defendants guilty of first-degree murder, and the trial court entered judgments sentencing defendants to life imprisonment. Defendants appeal to this Court as a matter of right.

The State's evidence tended to show that on 23 June 1994, Eric Daye, Brad Adams, and Caswell Lindsay went to Club D'Elegance, a nightclub located in Winston-Salem, North Carolina. While Daye was inside the club, defendant Gillis bumped Daye and caused him to spill his drink. Daye told Adams and Lindsay he was going to "get" Gillis when he left the club. The three men discussed robbing Gillis because he had on a "nice gold chain." The club closed at 3:00 a.m., and Daye and his friends went out to the parking lot. The three men approached Gillis; Daye "snatched" Gillis' necklace; and Adams punched Gillis in the face. Gillis ran from the parking lot and joined defendant Evans. Evans was holding a gun and standing at the door of a car. Gunshots were fired, and all the men left the area.

Daye got into a car with Adams and Lindsay and drove from Club D'Elegance to Club 25, another nightclub in Winston-Salem. During the drive Daye noticed that his hand had been injured and was bleeding. The three men got out of the car at Club 25, and Daye asked a group of people gathered in front of the club for something to wipe his hand.

Daye saw a car traveling slowly down the street and saw defendant Evans "hanging out the window with a gun." Defendant Gillis was also in the car. Daye said, "[T]here they go." Evans fired shots toward the club from inside the car. Adams pulled out a gun and started

shooting back at the car. The crowd scattered; however, Willeana Goodman Martin was shot and killed in the cross fire.

Both defendants testified at trial and presented evidence on their own behalf. Defendant Evans testified that he did not know defendant Gillis on 23 June 1994 and that he had never been in a car with Gillis. Evans presented evidence that he was at his girlfriend's home from approximately 2:35 on the morning of the shooting.

Defendant Gillis testified that he did not know defendant Evans on 23 June 1994 and that he had never been in a car with Evans. Gillis denied that he had been robbed on the night of the shooting. Gillis presented evidence that he was at Tangerine Dobson's house on 23 June 1994 from approximately 2:20 a.m. to 4:15 a.m.

Defendant Gillis also testified about a pretrial statement he gave police officers in which he admitted involvement in the shootings at both clubs. Gillis testified that the statement was not true and that he only gave the statement because the officers refused to accept his initial statement that he was not involved and because he was tired and "ready to go." Gillis further testified that he gave the statement after officers had gone over several times what supposedly happened.

On appeal both defendants contend the trial court committed instructional errors. Neither defendant objected at trial to the instructions assigned as error. Therefore, our review as to these instructions is limited to a review for plain error. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). Plain error is error in the trial court's instruction which is "so fundamental as to amount to a miscarriage of justice" or which probably resulted in the jury reaching a verdict different from the one it otherwise would have reached. *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

[1] Both defendants first contend the trial court coerced a jury verdict by instructing the jury that its failure to reach a verdict would result in a mistrial and require a retrial of the case. During deliberations the foreperson informed the court that the jury had reached a verdict in one of the cases but that it had not been able to reach a verdict in the remaining case. The trial judge instructed the jury to continue deliberating. The trial judge stated:

[Y]ou heard a lot of conflicting evidence in this case and I'm sure it's not an easy task; but if you cannot agree, I would have to

declare a mistrial; and I have no reason to believe that any other twelve jurors are more intelligent than you are or they would hear any different evidence than what you've heard in this case. I'm going to ask that you deliberate a little bit longer in hopes that you can agree.

Defendants contend that this statement was made in violation of N.C.G.S. § 15A-1235, which contains guidelines for instructing a deadlocked jury. Not having objected to this instruction at trial, defendants must show that a reasonable probability exists that the result would have been different had this instruction not been given. *Id.* at 213, 362 S.E.2d at 251.

Pursuant to N.C.G.S. § 15A-1235,

   (a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

   (b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

   (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

   (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

   (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

   (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

   (c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

N.C.G.S. § 15A-1235 (1988). In the instant case the trial judge also instructed the jurors as follows:

I do not ask any juror to compromise his or her convictions or do violence to your conscience, but the purpose of a jury is everybody to have their say, fully discuss it, reexamine your position if you think it might be wrong. However, don't agree just to be getting a verdict. You have to be satisfied about it in your own minds, but I will ask you to discuss it a little bit longer. As I say, six hours is right long, but you've heard four days or more of testimony, a lot of conflicting testimony.

And, again, that's why we have twelve jurors, to sit together, listen to one another's position about it, reevaluate your position on it and see if you can't come to some conclusion. However, again, don't agree just to be agreeing. Don't compromise your convictions or do violence to your conscience, but see if you can't resolve the matter.

The purpose behind the enactment of N.C.G.S. § 15A-1235 was to avoid coerced verdicts from jurors having a difficult time reaching a unanimous decision. *State v. Williams*, 339 N.C. 1, 39, 452 S.E.2d 245, 268 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995). In the instant case the trial court twice admonished the jurors not to compromise their convictions or do violence to their consciences in order to reach a verdict. The substance of these instructions was to ask the jury to continue its deliberations, and the instructions were not coercive. "Indeed we note that the effect of the instructions was not so coercive as to impel defendant's trial counsel to object to the instructions." *State v. Peek*, 313 N.C. 266, 272, 328 S.E.2d 249, 253 (1985). Reading the instruction as a whole, we find no error.

[2] Both defendants also contend the trial court's instructions on acting in concert were erroneous. Defendants contend the instructions permitted the jury to convict defendants without determining that each possessed the requisite *mens rea* to commit premeditated and deliberate murder. Portions of the instructions given on first-degree murder were as follows:

So, members of the jury, for you to find each defendant guilty of first degree murder, the State of North Carolina must prove

five things beyond a reasonable doubt and these five things must be proven as to each defendant.

First, that the defendant or someone acting in concert with him intentionally and with malice killed Ms. Martin by shooting at Brad Adams or Eric Day[e].

. . . .

Second, the State must prove beyond a reasonable doubt that the defendant's act—or someone acting in concert with him—was the proximate cause of Ms. Martin's death.

Third, that the Defendant Gillis and the Defendant Evans intended to kill Brad Davis (sic) or Eric Day[e] or both and killed Ms. Martin instead. . . .

Fourth, that the Defendant Gillis and that the Defendant Evans acted with premeditation; that is, that each formed the intent to kill either Brad Adams or Eric Day[e] over some period of time, however short, before he acted.

And, fifth, that the Defendant Gillis and the Defendant Evans each acted with deliberation, which means that he acted while he was in a cool state of mind.

We reject defendants' argument for two reasons. First, in *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997), a majority of this Court overruled *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), relied upon by defendants, and held that acting in concert is as follows:

[I]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

[*State v.*] *Erlewine*, 328 N.C. [626,] 637, 403 S.E.2d [280,] 286 [(1991)] (quoting [*State v.*] *Westbrook*, 279 N.C. [18,] 41-42, 181 S.E.2d [572,] 586 [(1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972)] (alterations in original).

*Barnes*, 345 N.C. at 233, 481 S.E.2d at 71.[1] Since the crime in this case was committed prior to 29 September 1994, the certification date in *Blankenship*, the application of acting in concert as enunciated in *Erlewine* and reinstated in *Barnes* to this case would not violate the constitutional prohibitions against *ex post facto* laws.

Secondly, the instructions as given comport with the *Blankenship* mandate. The instructions informed the jury that, in order to convict each defendant of first-degree murder, it must find that each defendant possessed the intent to kill and that each defendant acted with premeditation and deliberation. The portions of the instructions which contain the phrase "or someone acting in concert with [defendant]" related only to the general intent elements of first-degree murder. *Blankenship* was inapplicable to general intent crimes. *State v. McCoy*, 122 N.C. App. 482, 470 S.E.2d 542, *disc. rev. denied*, 343 N.C. 755, 473 S.E.2d 622 (1996).

As to the specific intent elements of first-degree murder, the trial court instructed that defendant Gillis and that defendant Evans must have acted with premeditation and deliberation and intended to kill Brad Adams or Eric Daye. The trial judge later reemphasized to the jury that it must find that "Defendant Gillis acted with malice, with premeditation and deliberation" in order to return a guilty verdict against Gillis and that it must find that "Defendant Evans acted with malice and with premeditation and deliberation" in order to return a guilty verdict against Evans. These instructions did not permit the jury to convict defendants without determining that each possessed the *mens rea* to commit first-degree murder.

We also reject defendants' contention that the use of the conjunctive in referring to defendants on the specific intent elements of the offense constituted error, and this assignment of error is overruled.

[3] Defendant Gillis further contends the trial court's instructions on transferred intent were erroneous in that they permitted the jury to convict him based on the intent of his codefendant. The victim in the instant case was an innocent bystander. Therefore, the prosecution relied upon the principle of transferred intent in its theory of first-degree murder against Gillis. The trial court stated, "if the defendant intended to shoot Eric Day[e] or Brad Adams but actually shot Ms.

---

1. Although the author of this opinion joined with the majority in *State v. Blankenship* and with the minority in *State v. Barnes*, she is now bound by *stare decisis* to apply the *Barnes* precedent in the instant case.

Martin, the legal effect would be the same as if the defendants had actually shot Brad Adams or Eric Day[e]." Gillis contends that by the use of the word "defendant" and then the word "defendants," the jury was instructed that it could apply the rule of transferred intent without an individual determination as to each defendant.

Once again our review is limited to a review for plain error. *Odom*, 307 N.C. at 659-60, 300 S.E.2d at 378. When the instructions in the instant case are viewed as a whole, the transferred intent instruction did not detract from the instructions on the elements of the crime, which apprised the jury of the intent which it had to find in order to convict Gillis of first-degree murder. Defendant has failed to carry his burden of showing a reasonable probability that the result in his trial would have been different had this instruction not been given. *Bagley*, 321 N.C. at 213, 362 S.E.2d at 251.

**[4]** Finally, defendant Gillis contends that the trial court erred in denying his proffered instruction on his character for peacefulness. Defendant sought to bolster his contention that he was not part of the shooting with Evans by presenting witnesses who testified that Gillis was not a violent person. At the charge conference defense counsel requested that the jury be instructed on defendant's character for nonviolence; the trial court declined to give this instruction.

In order to obtain relief on this theory, defendant must not only show that the failure to give the instruction was error, but also that the error was prejudicial. Given the substantial evidence of his participation in the crime, Gillis cannot show that he was prejudiced by the omission of this instruction. Two eyewitnesses identified Gillis as being in the car with Evans when the shooting took place at Club 25; one witness identifed him as the driver. Furthermore, Gillis gave a statement to police officers wherein he admitted his participation in the events on 23 June 1994 up to and including the shooting at Club 25. Hence, assuming *arguendo* that failure to give the instruction was error, Gillis cannot show that a reasonable possibility exists that, had the requested instruction been given, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988).

**[5]** Each defendant also contends the trial court made other noninstructional errors. Defendant Gillis contends the trial court erred by submitting the case against him to the jury, as there was no evidence beyond mere presence to support a conviction of first-degree murder based on acting in concert.

Under the theory of acting in concert, a defendant "may be found guilty of an offense if he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Wilson*, 322 N.C. 117, 141, 367 S.E.2d 589, 603 (1988). Defendant contends that, in the instant case, there was no evidence presented of a common plan or scheme between the two defendants. We disagree.

The trial testimony tended to show that Gillis was robbed of his necklace by Daye, Adams, and Lindsay on the evening of 23 June 1994 in the parking lot of Club D'Elegance; that immediately thereafter Gillis conferred with Evans, who had a gun and opened fire on the three men; that Gillis and Evans followed the three men from Club D'Elegance to Club 25; that Gillis and Evans drove by Club 25, with Evans hanging out the car window shooting; that Gillis according to one witness was driving the car from which Evans was shooting; and that Willeana Martin was shot and killed while running toward the doorway of Club 25. This evidence is sufficient to support a reasonable inference that Gillis and Evans killed Willeana Martin pursuant to a common plan to kill Eric Daye, Brad Adams, and/or Caswell Lindsay and that Gillis was not merely present at the scene of the crime. This assignment of error is overruled.

**[6]** Defendant Evans contends the trial court erred by denying his motion to sever his trial from codefendant Gillis' trial. Evans first argues that the denial of this motion resulted in the violation of the principles set out in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968). In *Bruton* the United States Supreme Court held that at a joint trial, admission of a statement by a nontestifying codefendant that incriminated the other defendant violated that defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. *Id.* at 126, 20 L. Ed. 2d at 479. Evans further argues that the State's impeachment of Gillis by reference to these extrajudicial statements rendered the joinder of these defendants' cases for trial fundamentally unfair and a violation of due process and N.C.G.S. § 15A-927.

Defendant Evans contends that two *Bruton* violations occurred during his trial. First, the State called the police officer who had interrogated Gillis and attempted to introduce a sanitized version of Gillis' confession. On cross-examination the police officer volunteered that Gillis' confession implicated defendant. Second, Gillis testified at

trial on his own behalf to an alibi defense which was inconsistent with his prior confession. The court permitted the State to impeach Gillis with an unsanitized version of Gillis' prior inconsistent police statement and his prior inconsistent testimony at a suppression hearing, both of which implicated defendant.

The principles set out in *Bruton* apply only to the extrajudicial statements of a declarant who is unavailable at trial for full and effective cross-examination. *Nelson v. O'Neil*, 402 U.S. 622, 29 L. Ed. 2d 222 (1971). Where the declarant takes the stand and is subject to full and effective cross-examination, a codefendant implicated by extrajudicial statements has not been deprived of his right to confrontation. *State v. Rasor*, 319 N.C. 577, 356 S.E.2d 328 (1987). In the instant case Gillis took the stand, testified, and was subject to cross-examination.

There was, likewise, no violation of due process and N.C.G.S. § 15A-927. Joinder of defendants is permitted pursuant to N.C.G.S. § 15A-926(b)(2)(a) where the State seeks to hold each defendant accountable for the same offenses. However, N.C.G.S. § 15A-927(c)(2) requires the court to grant a severance of defendants' cases whenever it is necessary to promote or achieve "a fair determination of the guilt or innocence" of a defendant. The question of whether defendants should be tried jointly or separately is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed on appeal absent a showing that joinder has deprived a defendant of a fair trial. *Rasor*, 319 N.C. at 581, 356 S.E.2d at 331.

In the instant case there was plenary evidence, irrespective of Gillis' statements, that Evans was involved in the shooting death of Willeana Martin. Brad Adams testified that a car drove by Club 25 and that Evans was hanging out the window shooting. Eric Daye similarly testified that a car drove up slowly to Club 25 and that Evans was hanging out the window firing a gun. On this record Evans cannot show that the joinder of these cases deprived him of a fair trial.

In addition, the trial judge gave a limiting instruction as to the statements at issue. The trial judge advised the jury that evidence of prior inconsistent statements was not to be considered as evidence of the truth of what was said at that earlier time, but was only to be considered for the purpose of assessing the credibility of the witness who made the prior statement. Any error in the admission of these

statements was cured by the limiting instruction. *See State v. Paige*, 316 N.C. 630, 343 S.E.2d 848 (1986). "It would be unusual for all evidence at a joint trial to be admissible against both defendants, and we often rely on the common sense of the jury, aided by appropriate instructions of the trial judge, not to convict one defendant on the basis of evidence which relates only to the other." *Id.* at 643, 343 S.E.2d at 857. This assignment of error is overruled.

For the foregoing reasons we hold that defendants' trial was free from prejudicial error.

NO ERROR.