IN THE COURT OF APPEALS OF NORTH CAROLINA

COA No. 22-514

Filed 20 June 2023

Wayne County, No. 18CRS52990

STATE OF NORTH CAROLINA

v.

KARL DAVID COLT, Defendant.

Appeal by defendant from judgment entered 26 April 2021 by Judge William W. Bland in Wayne County Superior Court. Heard in the Court of Appeals 11 April 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Marissa K. Jensen, for the State.*

*Cooley Law Office, by Craig M. Cooley, for defendant-appellant.*

FLOOD, Judge.

Karl David Colt ("Defendant") appeals from the trial court's Judgment sentencing him to 80 to 108 months' imprisonment. Defendant argues the State failed to satisfy the *corpus delicti* rule primarily because the minor victim's body was never found, and the State did not present sufficient evidence establishing the minor victim died. Defendant further argues the trial court erred in admitting testimony

regarding the minor's mother's conviction for second-degree murder because, among other reasons, the testimony was an inadmissible testimonial statement.

After careful review, we conclude that the *corpus delicti* rule was satisfied because substantial independent evidence established the trustworthiness of Defendant's confession. We further conclude the trial court did not err in overruling Defendant's objections to testimony that the mother was in prison for second-degree murder.

## I. Factual and Procedural History

Defendant was indicted on 8 September 2020 for concealment of the death of a child who did not die of natural causes. On 26 April 2021, a jury found Defendant guilty. Defendant was sentenced to an aggravated range of 80 to 108 months' imprisonment.

The evidence presented at trial tended to show Kayla Clements ("Clements") gave birth to a baby boy, Kaceyn, on 11 March 2016. In the spring of 2016, shortly after Kaceyn was born, Clements and Kaceyn moved into the apartment of Clements's younger sister, Sandi. Clements and Kaceyn lived with Sandi until October 2016. Sandi testified that, while Clements and Kaceyn lived in her apartment, Kaceyn spent most of his time in a Graco Pack 'n Play (the "Pack 'n Play"). Sandi further testified that the Pack 'n Play had a blue frame with a green cover, and the green cover had animals around the trim.

Kaceyn's father, Jose Jimenez ("Jimenez"), had periodic visits with Kaceyn

after his birth, but Clements stopped allowing Jimenez to see Kaceyn in late 2016. At trial, testimony confirmed that the last time Jimenez saw Kaceyn was 12 September 2016. While no exact date was given, trial testimony also revealed Jimenez allegedly made arrangements with Clements to see Kaceyn in "late 2016," but Clements always came up with last minute excuses for why she could not meet Jimenez.

In late 2017, Jimenez hired a private investigator and an attorney to help locate Kaceyn, but they could not find him. Jimenez testified that Clements visited Florida in 2017 for "about four or five months" and did not bring Kaceyn with her.

On 8 February 2018, Captain Shawn Harris ("Captain Harris") of the Wayne County Sheriff's Office (the "WCSO") received a call from an officer of the Goldsboro Police Department who had spoken with Jimenez about a missing child. Because the officer believed the case originated outside the jurisdiction of Goldsboro, he introduced Jimenez to Captain Harris. Jimenez explained to Captain Harris that Clements had stopped allowing him to see Kaceyn, and Jimenez's attempts to find Kaceyn with the help of a private investigator failed. As of 8 February 2018, Jimenez had not found Kaceyn, but he did know Clements was in the Carteret County Jail, as confirmed by Captain Harris, who testified she was there on a civil contempt order.

Based on this meeting with Jimenez, the WCSO opened a case on Kaceyn, and on 12 February 2018, it requested the help of the State Bureau of Investigation (the "SBI") in what was officially considered a missing person investigation. Agent Aaron

Barnes ("Agent Barnes") of the SBI was assigned to the case.

Through the joint investigation of the WCSO and SBI (collectively, "investigators"), investigators determined the following. On or around 1 October 2016, Clements and Kaceyn moved out of Sandi's apartment and into a home in Goldsboro, North Carolina, (the "Home"). Clements and Kaceyn lived in the Home from approximately October 2016 through November 2016. Jared Greene ("Greene") and Phillip Goff ("Goff") also resided at the Home. Clements had a romantic relationship with Goff, and Greene had a romantic relationship with Defendant, who regularly visited the Home on weekends.

On 15 February 2018, Agent Barnes and two other detectives involved with the investigation interviewed Defendant. Investigators requested to interview Defendant based on his contacts with Clements, Greene, and Goff. This interview was audio recorded, and the recording was played at trial in the presence of the jury.

In the 15 February 2018 interview, Defendant confirmed that he visited Greene, Clements, and Goff at the Home on weekends from August 2016 until approximately May 2017.

During the interview, Defendant stated "at one time there was a child [in the Home], but I do not know what ever happened to the child after that." Defendant confirmed the child in the home was Clements's. Defendant described the Home as "a small cinder block house." Defendant described Kaceyn as an "infant," but guessed

he was likely younger than a year old. In October 2016,[1] when Defendant saw Kaceyn for the first time, he observed Kaceyn in a playpen and noticed Kaceyn had bruises on his face that Defendant thought could have been the result of "shaken baby" syndrome. Defendant further told investigators the next time he saw Kaceyn, Kaceyn seemed to have trouble breathing, had a severely swollen head, and appeared braindead. Defendant stated he did not think Kaceyn could have survived without medical treatment.

When investigators asked Defendant if he knew where Kaceyn was, Defendant told investigators he thought it was possible Clements and Goff hid Kaceyn's body in a wooded area across the street from the Home where Goff frequently set up a campsite. Defendant described the campsite as being "a good distance" and not fully visible from the road, with a beaten down path with cut down branches leading to the campsite. Defendant drew investigators a map detailing where the campsite was in comparison to the Home.

Following the interview, investigators confirmed Defendant's statements that the home was a small cinder block residence with a wooded area across the street. On 16 February 2018, investigators searched the wooded area and found "a dark blue or purple . . . Graco playpen frame," a stuffed teddy bear, an inflatable pool toy, and

---

[1] Defendant told investigators he did not know the exact date, but it was right after Hurricane Matthew because road closures made it difficult for him to drive to the Home. During the trial, Judge Bland took judicial notice that Hurricane Matthew passed through North Carolina on 9 October 2016.

a piece of fabric with a Hello Kitty design on it. Agent Barnes also confirmed that the wooded area contained a campsite due to the presence of a stone fire pit and logs for sitting, and the campsite was not visible from the road.

At trial, the State presented the jury with the Graco playpen frame found in the wooded area. After the playpen frame was set up, the State asked Sandi if the playpen frame found in the woods matched the dimensions of the Pack 'n Play Clements used for Kaceyn while living with Sandi. Sandi confirmed the frame found in the woods had the same dimensions as Kaceyn's Pack 'n Play. Sandi testified that Kaceyn's Pack 'n Play had a loose end-rail that prevented the Pack 'n Play from standing up properly.

Agent Barnes confirmed Greene had moved to Florida when Agent Barnes traveled to Florida to interview Greene regarding Kaceyn's disappearance. During the interview, Greene showed Barnes texts in which Defendant stated, "[I'm] getting screwed in this case by [Clements] killing her baby," "[Clements] killed or abused her child," and "[y]ou didn't report the crime to the cops just like I didn't[.]" At trial, Agent Barnes read these text messages to the jury.

On 27 March 2018, investigators interviewed Defendant a second time. This interview was also recorded and played at trial in the presence of the jury. Defendant claimed he overheard Clements tell Goff that Kaceyn had died, and they needed to "get rid" of Kaceyn. Even though, in his first interview, Defendant stated he thought Kaceyn may have been buried in the woods across from the home, in this interview,

Defendant told investigators Clements and Goff made plans to hide the body somewhere around "Grasshopper's home." Grasshopper was a woman who frequently sold methamphetamine to Defendant, Clements, and Goff. Defendant claimed Clements told Goff that Grasshopper's house would be an excellent place to get rid of the body.

According to Defendant, when Clements, Goff, Greene, and Defendant were preparing to leave the Home, Clements went into her room to, presumably, get herself and the baby ready. When Clements came out of the room, she had the baby carrier completely covered with a tan blanket. Defendant drove Clements, Greene, and Goff to Grasshopper's house "around midnight." While at Grasshopper's house, Goff waited in the car while everyone else went inside. About "twenty to thirty minutes later," Clements, Greene, and Defendant returned to the car after purchasing methamphetamine from Grasshopper, and the carrier was empty and the blanket was wadded up in a ball.

Defendant hypothesized Goff could have disposed of Kaceyn's body in a "line of trees" located on the right side of Grasshopper's house. Defendant told investigators that, when Goff, Clements, Defendant and Greene all returned home that night, Goff and Clements told the other two not to say anything about what took place that night. Defendant stated in the second interview that he felt bad that he did not call for help, and one of his biggest mistakes was failing to tell people about Kaceyn's death or report it to law enforcement.

Agent Barnes testified that through his investigation, he determined "Grasshopper" was an individual named Sonya Mendez who sold methamphetamine. Throughout the course of his investigation, Agent Barnes never found anyone who saw Kaceyn after October 2016. At the time he was last seen, Kaceyn would have been only eight months old, and by the time the investigation began, he would have been almost two years old.

On 13 July 2018 an arrest warrant was issued for Defendant for concealment of the death of a child. On 8 September 2020, a grand jury indicted Defendant for concealment of death of a child who did not die of natural causes.

At trial, Defendant's counsel motioned for mistrial numerous times. The first motion for mistrial was based upon Agent Barnes's testimony that Clements was in prison for second-degree murder. During Agent Barnes's testimony, the State asked him where Clements presently was, and Agent Barnes testified that she was "currently in the North Carolina Department of Corrections." The State then asked, "[d]o you know why?" Defendant's counsel then objected on various grounds, including the Confrontation Clause, relevancy, unfair prejudice, and a run-around of the *corpus delicti* rule.

The trial court overruled Defendant's counsel's objection, allowing the State to ask why Clements was in the North Carolina Department of Corrections. Upon questioning by the State, Agent Barnes answered, "[f]or second-degree murder." Defendant's counsel motioned for mistrial due to this testimony, and the trial court

denied the motion.

In a renewed motion for mistrial, Defendant's counsel added as another ground for mistrial the trial court's ruling that there was sufficient evidence to satisfy the *corpus delicti* rule. The trial court denied the motion.

At trial, Defendant's counsel also motioned to dismiss on the basis of insufficiency of the evidence and failure to satisfy the *corpus delicti* rule. The trial court denied the motion, finding Defendant's confession was supported by substantial independent evidence tending to establish its trustworthiness, and finding the State presented substantial evidence of each essential element of the crime charged.

Defendant did not testify or present evidence at trial. A jury convicted Defendant of concealment of the death of a child who did not die of natural causes, and the trial court sentenced Defendant in the aggravated range of 80 to 108 months' imprisonment.

## II. **Jurisdiction**

Appeal lies of right directly to this Court from any final judgment of a superior court. N.C. Gen. Stat. § 7A-27(b)(1) (2021). "A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered." N.C. Gen. Stat. § 15A-1444(a) (2021).

## III. **Issues**

The issues before this Court are whether the trial court erred by: (1) denying Defendant's *corpus delicti* challenge and motion to dismiss, and (2) overruling Defendant's objections to Agent Barnes's testimony that Clements was in prison for second-degree murder.  We will address these issues in turn.

## IV. Analysis

### A. *Corpus Delicti* Challenge

On appeal, Defendant argues the State failed to satisfy the *corpus delicti* rule because it did not present evidence to strongly corroborate Defendant's extrajudicial statements to law enforcement.  We disagree.

#### 1. Standard of Review

"We review *de novo* the trial court's denial of a motion to dismiss."  *State v. DeJesus*, 265 N.C. App. 279, 284, 827 S.E.2d 744, 748 (2019).  "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."  *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.  If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances.  Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in

combination, satisfy [it] beyond a reasonable doubt that
the defendant is actually guilty.

*State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation and internal quotation marks omitted) (alteration omitted).

"Upon a defendant's motion to dismiss for insufficient evidence, the question for the court is whether there is substantial evidence (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of such offense." *DeJesus*, 265 N.C. App. at 284, 827 S.E.2d at 748. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "Whether a defendant's extrajudicial confession may survive a motion to dismiss depends upon the satisfaction of the *corpus delicti* rule." *DeJesus*, 265 N.C. App. at 284, 827 S.E.2d at 749.

## 2. Relevant Law

"[A]n extrajudicial confession, standing alone, is not sufficient to sustain a conviction of a crime." *State v. Parker*, 315 N.C. 222, 229, 337 S.E.2d 487, 491 (1985). When the State substantially relies upon an extrajudicial confession, the reviewing court applies the *corpus delicti* rule "which requires some level of independent corroborative evidence in order to ensure that a person is not convicted of a crime that was never committed." *DeJesus*, 265 N.C. App. at 284, 827 S.E.2d at 749 (internal quotation marks omitted). *Corpus delicti*, meaning the body of the crime,

consists of "the injury or harm constituting the crime," and a showing that "th[e] injury or harm was caused by someone's criminal activity." *Parker*, 315 N.C. at 231, 337 S.E.2d at 492. A defendant's confession ordinarily furnishes the proof necessary to show "the defendant was the perpetrator of the crime." *State v. Trexler*, 316 N.C. 528, 533, 342 S.E.2d 878, 881 (1986).

The *corpus delicti* rule itself is rooted in three policy factors:

> first, the shock which resulted from those rare but widely reported cases in which the "victim" returned alive after his supposed murderer had been convicted; and secondly, the general distrust of extrajudicial confessions stemming from the possibilities that a confession may have been erroneously reported or construed, involuntarily made, mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual[;] and, thirdly, the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.

*DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749.

"[T]o be relied on to prove the *corpus delicti* . . . the trustworthiness of the confession" must be "established by corroborative evidence." *Id.* at 235, 337 S.E.2d at 494. Our Supreme Court expanded the strict rule that always required independent proof of the *corpus delicti* and adopted in its place the "trustworthiness version" of the rule. *Id.* at 230, 337 S.E.2d at 492. Under this version, "the adequacy of corroborating proof is measured not by its tendency to establish the *corpus delicti* but by the extent to which it supports the trustworthiness of the admissions."

*Id.* at 230, 337 S.E.2d at 492 (quotation marks omitted). This applies especially to the instant case where the victim's body cannot be found. *See State v. Cox*, 367 N.C. 147, 153, 749 S.E.2d 271, 276 (2013) (carefully applying the trustworthiness version of the *corpus delicti* rule is especially important in those cases where there is no body to be found).

Under the trustworthiness version of the *corpus delicti* rule, "the State need not provide independent proof of the *corpus delicti* so long as there is substantial independent evidence tending to establish the trustworthiness of the defendant's extrajudicial confession." *DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749 (quotation marks omitted). "Such substantial independent evidence may includ[e] facts that tend to show the defendant had the opportunity to commit the crime, as well as other *strong* corroboration of *essential* facts and circumstances embraced in the defendant's confession." *DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749 (emphasis in original) (quotation marks omitted). We may look to the totality of the circumstances to determine whether the evidence strongly corroborates a defendant's confession. *State v. Sweat*, 366 N.C. 79, 85, 727 S.E.2d 691, 696 (2012) ("Under the totality of the circumstances, the State strongly corroborated essential facts and circumstances embraced in defendant's confession."); *see also DeJesus*, 265 N.C. App. at 286, 827 S.E.2d at 750 ("[T]ogether with the [d]efendant's opportunity to commit the[] crimes and the circumstances surrounding his statement to detectives provide *sufficient corroboration to engender a belief in the overall truth of [d]efendant's confession.*")

(emphasis added). Where there is no contention that a defendant's "extrajudicial confession was the product of deception or coercion," the trustworthiness of a defendant's confession is "bolstered." *DeJesus*, 265 N.C. App. at 286, 827 S.E.2d at 750 (quotation marks omitted); *see also Cox*, 367 N.C. at 154, 749 S.E.2d at 277 ("The trustworthiness of [the] defendant's confession is thus further bolstered by the evidence that defendant made a voluntary decision to confess.").

It is unnecessary for the State to present "independent evidence of *each element* of the crime to show [that the d]efendant's confession . . . [is] trustworthy. . . . The State need only show corroborative evidence tending to establish the reliability of the confession—not the reliability of each part of the confession which incriminates the defendant." *State v. Messer*, 255 N.C. App. 812, 822, 806 S.E.2d 315, 323 (2017) (emphasis added) (quotations omitted).

### 3. Elements of the Crime

The elements of the concealment of death charge are: (1) failure to notify law enforcement of the death of a child; (2) intent to conceal the death of a child; (3) the victim was a child who is less than sixteen years of age; and (4) knowing or having reason to know the child did not die of natural causes. *See* N.C. Gen. Stat. §§ 14-401.22(a1), (e) (2021).

Here, substantial evidence of the first element exists because Defendant never discussed Kaceyn's death with law enforcement until investigators interviewed him, corroborating Defendant's confession that one of his biggest mistakes was failing to

tell people about Kaceyn's death or report it to law enforcement. *See* N.C. Gen. Stat. §§ 14-401.22(a1), (e). Additionally, there is substantial evidence of the third element because Sandi's trial testimony that Kaceyn was born on 11 March 2016 corroborates Defendant's confession that Kaceyn was an infant likely younger than a year old. *See* N.C. Gen. Stat. §§ 14-401.22(a1), (e). Accordingly, we must determine whether at trial, the State presented substantial independent evidence tending to establish the trustworthiness of Defendant's confession as it relates to the second element, the intent to conceal the death of a child, and the fourth element, knowing or having reason to know the child did not die of natural causes. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749; *see also See* N.C. Gen. Stat. §§ 14-401.22(a1), (e).

Defendant argues that numerous pieces of evidence the State presented at trial were either not significant or corroborative, or both. Defendant grounds this argument primarily on his assumption that the State did not satisfy what he views was its threshold burden to prove, independently of Defendant's statements to investigators, that Kaceyn was dead. We conclude, however, in view of the totality of the evidence presented at trial, the State strongly corroborated Defendant's statements to investigators. *See Sweat*, 366 N.C. at 85, 727 S.E.2d at 696.

*a. Intent to Conceal the Death of a Child*

First, we must determine whether substantial independent evidence tends to establish that Kaceyn was, in fact, dead. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749*; see also Messer*, 255 N.C. App. at 822, 806 S.E.2d at 323. We determine

that substantial evidence tends to support Kaceyn's death, satisfying the first policy factor justifying the *corpus delicti* rule: that no one should be convicted of a crime for a death that did not occur. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749.

Evidence presented at trial tended to show the following. Jimenez had periodic visits with Kaceyn after Kaceyn's birth, but he was unable to see Kaceyn anymore after Clements made excuses as to why she could not meet with Jimenez, likely because Clements no longer had Kaceyn. Jimenez's testimony as to when he last saw Kaceyn, in late September 2016, matches Defendant's statements to investigators that Defendant last saw Kaceyn right after Hurricane Matthew, which passed through North Carolina on 9 October 2016. Jimenez's attempts to find Kaceyn with the help of a private investigator and an attorney failed in late 2017. Clements traveled to Florida for four or five months in 2017, but she did not have Kaceyn with her. Jimenez could not find Kaceyn in late 2017, and Clements did not travel to Florida with Kaceyn, likely because Kaceyn was deceased. Law enforcement failed to find Kaceyn even after Jimenez's report of his missing child. These facts clearly establish that Kaceyn was missing under inherently suspicious circumstances.

Moreover, the evidence discovered across the road from the Home establishes the trustworthiness of Defendant's confession that Kaceyn was dead. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749. Investigators confirmed there was a stone fire pit and logs, which were invisible from the road, corroborating Defendant's statements to investigators that there was a hidden campsite across the road from

the Home. In the campsite area, law enforcement found a stuffed teddy bear, an inflatable pool toy, fabric with a Hello Kitty design on it, and a "blue or purple" Graco playpen frame. The discovery of the children's items in the woods at a minimum supports an inference of an attempt to discard a deceased baby's items at the hidden campsite.

Defendant argues that the dark blue or purple playpen discovered at the campsite does not match the one in which Clements kept Kaceyn at Sandi's apartment, but Sandi's testimony that Kaceyn spent most of his time in a blue playpen closely aligns with Defendant's statements to investigators.

Therefore, in view of the totality of the circumstances and in the light most favorable to the State, we conclude the discarded children's items, taken together with the fact that no one had seen Kaceyn since October 2016 at the latest, constitutes strong corroboration of Defendant's confession that Kaceyn was dead. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749; *see also Sweat*, 366 N.C. at 85, 727 S.E.2d at 696; *see also Rose*, 339 N.C. at 192, 451 S.E.2d at 223.

Second, substantial evidence tends to establish Defendant's intent to conceal the death of a child. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749. Defendant's texts to Greene in which Defendant stated, "[Clements] killed or abused her child" and "[y]ou didn't report the crime to the cops just like I didn't" demonstrate that Defendant knew a crime occurred yet purposely failed to report it to law enforcement. Defendant argues his texts are not independent evidence, as required

by *Parker*, 315 N.C. at 236, 337 S.E.2d at 495, because they are Defendant's own words. Defendant's text messages to Greene, however, are evidence independent of Defendant's statements to investigators.

Accordingly, substantial independent evidence tends to establish Defendant's intent to conceal Kaceyn's death. *See DeJesus*, 265 N.C. App. at 284–85, 827 S.E.2d at 748–49.

### b. *Death by Unnatural Causes*

Finally, substantial evidence tends to establish that Defendant knew or had reason to know Kaceyn did not die of natural causes. *See DeJesus*, 265 N.C. App. at 284–85, 827 S.E.2d at 748–49. Defendant's text to Greene strongly corroborates Defendant's confession because these statements show Kaceyn's death was not natural. *See* N.C. Gen. Stat. §§ 14-401.22(a1), (e).

Substantial evidence also tends to establish that Defendant frequented the Home at the same time Clements and Kaceyn lived there and likely would have been aware of the suspicious circumstances surrounding Kaceyn's disappearance. Defendant himself related these circumstances to law enforcement, corroborating his statements to investigators that he did not think Kaceyn could survive without medical treatment as Kaceyn had bruises, trouble breathing, a severely swollen head, and appeared braindead.

Accordingly, substantial independent evidence regarding Defendant's knowledge of Kaceyn's unnatural death tends to establish the trustworthiness of

Defendant's confession. *See DeJesus*, 265 N.C. App. at 284–85, 827 S.E.2d at 748–49.

### 4. Voluntariness of the Confession

We note that there is no challenge to the voluntariness of Defendant's statements to law enforcement. Defendant was not under arrest during either of his recorded interviews with law enforcement. Because Defendant's confession was voluntary, its trustworthiness is bolstered, and the second factor justifying the *corpus delicti* rule—guarding against the untrustworthiness of an involuntary confession— is satisfied. *See DeJesus*, 265 N.C. App. at 286, 827 S.E.2d at 750; *Parker*, 265 N.C. App. at 285, 827 S.E.2d at 750.

We, therefore, find the *corpus delicti* rule is satisfied because there is substantial independent evidence tending to establish the trustworthiness of Defendant's confession. *See DeJesus*, 265 N.C. App. at 285, 827 S.E.2d at 749; *see also Sweat*, 366 N.C. at 85, 727 S.E.2d at 696. Moreover, Defendant's confession itself constitutes substantial evidence that he was the perpetrator of the crime. *See Parker*, 315 N.C. at 231, 337 S.E.2d at 492; *see also DeJesus*, 265 N.C. App. at 284, 827 S.E.2d at 748. Because there was substantial evidence of each element of the crime charged and that Defendant was the perpetrator, the trial court properly denied the motion to dismiss. *See DeJesus*, 265 N.C. App. at 284, 827 S.E.2d at 748.

**B. Testimony that Clements Was in Prison for Second-Degree Murder**

Next, Defendant argues the trial court erred by allowing Agent Barnes's testimony regarding Clements's conviction for second-degree murder because it: (1) was irrelevant because there was no questioning by the prosecutor or testimony by Agent Barnes connecting Clements's whereabouts to Kaceyn's death; (2) was unfairly prejudicial because it likely would lead jurors to believe that Clements killed Kaceyn and therefore, Defendant must have concealed Kaceyn's death; and (3) constituted a violation of the Confrontation Clause.

### 1. Rule 401

Defendant argues the State did not sufficiently connect its questioning about Clements's conviction for second-degree murder, and the testimony was therefore irrelevant pursuant to N.C.R. Evid. 401. We disagree.

"Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard[,] . . . such rulings are given great deference on appeal." *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quotation marks omitted).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Agent Barnes's testimony that Clements was in prison for second-degree murder was directly relevant to the fact that Kaceyn died because at trial, the jury heard testimony regarding the texts Defendant sent to Greene which stated, "[Clements]

killed or abused her child." Such evidence was relevant because it made it more probable that Kaceyn was deceased. *See* N.C.R. Evid. 401.

Accordingly, the trial court did not err by allowing such testimony because it was relevant to whether Kaceyn was dead. *See* N.C.R. Evid. 401; *see also Dunn*, 162 N.C. App. at 266, 591 S.E.2d at 17.

## 2. Rule 403

Defendant argues evidence of Clements being in prison for second-degree murder was unfairly prejudicial.

"We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion. An abuse of discretion results when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) (internal quotation marks and citations omitted).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C.R. Evid. 403.

Defendant specifically argues Agent Barnes's testimony regarding Clements's second-degree murder conviction unfairly prejudiced Defendant because it could have led the jurors to conclude Clements murdered Kaceyn, and Defendant must be guilty of concealing Kaceyn's death. This evidence was not unfairly prejudicial because, as addressed above in Section IV, substantial evidence established that Kaceyn died of unnatural causes. *See* N.C.R. Evid. 403.

Therefore, Agent Barnes's testimony did not unfairly prejudice Defendant, and the trial court did not err by overruling Defendant's objections. *See* N.C.R. Evid. 403; *see also Whaley*, 362 N.C. at 160, 655 S.E.2d at 390.

### 3. U.S. Const. amend. VI; N.C. Const. art. I, § 23

Defendant argues Agent Barnes's testimony that Clements was in prison for second-degree murder violated Defendant's constitutional right to confront witnesses against him.

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Harris*, 242 N.C. App. 162, 164, 775 S.E.2d 31, 33 (2015).

Under both our Federal and State Constitutions, defendants have the right to confront witnesses against them. U.S. Const. amend. VI; N.C. Const. art. I, § 23. The hallmark of a defendant's right to confront witnesses against him or her is cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 54, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177, 194 (2004). A witness's testimonial statements are inadmissible against a defendant unless at trial the witness "was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 54, 124 S. Ct. at 1365, 158 L. Ed. 2d. at 183.

Defendant reasons that Clements's conviction occurred because of her guilty plea, so testimony regarding her conviction equates to evidence of her guilty plea and therefore constitutes testimonial evidence against Defendant. While no North Carolina case directly addresses whether a witness's testimony regarding the murder conviction of a defendant in a different case constitutes a testimonial statement, we did find a Fourth Circuit case that is instructive. The guilty plea of a defendant from a different case does not constitute testimonial evidence. *United States v. Kuai Li*, 280 F. App'x 267, 269 (4th Cir. 2008) (federal district court did not err when it took judicial notice of guilty plea entered by a corrupt government official who assisted the defendant in the crime "because the taking of such notice did not result in the admission of a testimonial statement"). On appeal, a Confrontation Clause violation may be found to be a harmless error in light of other evidence inculpating a defendant. *United States v. Banks*, 482 F.3d 733, 741 (4th Cir. 2007).

Here, as an initial matter, Agent Barnes did not testify regarding how Clements's conviction for second-degree murder came about. As far as the jury members knew, it could have resulted from a jury conviction or from a guilty plea. Even if Agent Barnes's testimony somehow notified the jury of Clements's guilty plea, however, we need not decide whether that constituted a testimonial statement. Any potential error would be harmless in light of the other evidence establishing that Kaceyn died of unnatural causes. *See Banks*, 482 F.3d at 741.

Accordingly, the trial court did not commit prejudicial error by allowing Agent Barnes's testimony regarding Clements's whereabouts. *See Banks*, 482 F.3d at 741.

## V. **Conclusion**

We hold the trial court did not err in denying Defendant's motion to dismiss because there was sufficient evidence presented at trial, and the State satisfied the *corpus delicti* rule. We further hold that even if testimony that Clements was in prison for second-degree murder constituted testimonial evidence, any potential Confrontation Clause error was a harmless error in light of other evidence implicating Defendant in concealing Kaceyn's death.

AFFIRMED.

Judge CARPENTER concurs.

Chief Judge STROUD concurs in a separate opinion.

STROUD, Chief Judge, concurring.

While I agree with the majority that the trial court properly denied Defendant's motion to dismiss and would ultimately conclude there was no prejudicial error, I write separately as I do not agree with the analysis in section IV. B. 1 and 2 regarding Rules of Evidence 401 and 403.

As noted by the majority, Agent Barnes testified before the jury regarding his investigation of Kaceyn's disappearance. The State asked him "Now, through your investigation, do you know where Kayla Clements is now?" and he answered, "She is currently in the North Carolina Department of Corrections." The State then asked, "Do you know why?" At this point, Defendant objected and asked "to be heard outside the presence of the jury." Outside the presence of the jury, Defendant stated grounds for the objection in detail, including the Confrontation Clause and the *Bruton* rule,[2] as well as the lack of the relevance of the evidence, unfair prejudice under Rule 403, and due process.

---

[2] The *Bruton* rule stems from *Bruton v. United States*, 391 U.S. 123, 20 L.Ed.2d 476 (1968). "In *Bruton*[,] the United States Supreme Court held that at a joint trial, admission of a statement by a nontestifying codefendant that incriminated the other defendant violated that defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *State v. Evans*, 346 N.C. 221, 231, 485 S.E.2d 271, 277 (1997) (citing *Bruton*, 391 U.S. at 126, 20 L.Ed.2d at 479), *cert. denied*, 522 U.S. 1057, 139 L.Ed.2d 653 (1998). Furthermore, "[t]he principles set out in *Bruton* apply only to the extrajudicial statements of a declarant who is unavailable at trial for full and effective cross-examination. *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). Where the declarant takes the stand and is subject to full and effective cross-examination, a codefendant implicated by extrajudicial statements has not been deprived of his right to confrontation." *Evans*, 346 N.C. at 232, 485 S.E.2d at 277; *see State v. Hardy*, 293 N.C. 105, 118, 235 S.E.2d 828, 836 (1977) (summarizing the North Carolina Supreme Court's interpretation of the *Bruton* rule).

Defendant argued,

> They're trying to take an admission from a codefendant
> and use it to prove something here. Now that admission by
> Ms. Clements is admissible against her, but it is not
> admissible against my client. Now the State had every
> ability to issue a writ and have Ms. Clements come and
> testify here at this trial. They chose not to do so and they
> chose not to put her on the list, so this absolutely would
> violate the rules in Bruton and the confrontation clause,
> and therefore it is inadmissible testimony.

The discussion and voir dire regarding these objections continued at length, for 18 pages of transcript. Ultimately, based on the State's representation it would limit the question to Clements's imprisonment for second-degree murder; the trial court then overruled Defendant's objection. The State then asked Agent Barnes again in the presence of the jury why Clements was incarcerated, and Agent Barnes testified she was incarcerated for second-degree murder. Defendant then renewed his prior objections and moved to strike Agent Barnes's testimony, which the trial court overruled.

It is entirely reasonable to expect the jury would *assume* the victim was Kaceyn, but the identity of the victim was the primary reason for Defendant's objection to the question and the trial court's ruling on the objection. At oral argument of this case before this Court, the State could not articulate *any* reason the evidence that Clements was incarcerated for second-degree murder could be relevant *except* that it would tend to show Kaceyn was deceased. Clements was not there to testify as a witness. Nor did the State present a certified record of Clements's

- 2 -

conviction. Instead, the State sought to rely upon the jury's logical assumption of a fact – that Clements was imprisoned for *Kaceyn's* murder – when the trial court had already ruled Agent Barnes could not testify to this fact. Defendant objected to the evidence of the identity of the victim of Clements's second-degree murder conviction for several reasons and the trial court did not allow this evidence to be presented, and yet the majority opinion still finds the evidence of the second-degree murder conviction relevant and admissible *because* the jury would likely infer Kaceyn must have been the victim of the murder.

The majority opinion is correct that the only way the second-degree murder conviction could possibly be relevant in this case was if Kaceyn was the victim. The fact that Clements was imprisoned for murdering *someone* would not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2021). In other words, the fact that Clements murdered *someone* does not aid the jury in determining if Kaceyn was actually deceased or if Defendant concealed the death of Kaceyn. This unrelated crime would not "make the existence of any fact that is of consequence to the determination . . . more probable or less probable." N.C. Gen. Stat. § 8C-1, Rule 401. "While our law no longer strictly forbids stacking inferences upon each other, in this case the link between the circumstances proved by direct evidence and the inferences drawn from these circumstances stretches too far" because there was no evidence presented that

Clements was imprisoned for Kaceyn's murder, and the State did not question Agent Barnes on the identity of the victim of the second-degree murder, as it represented to the trial court. *State v. Lamp*, 383 N.C. 562, 571, 884 S.E.2d 623, 629 (2022) (citation omitted).

The testimony regarding Clements's imprisonment for second-degree murder was not relevant, but even worse, the only way it could be relevant is that the jury's logical assumption would be that Kaceyn was the victim. And this was the very reason for Defendant's objections and the State's tacit acknowledgement at trial of the merit of Defendant's objections based upon the Confrontation Clause and the *Bruton* case by the State's agreement not to elicit testimony as to the identity of the victim. The trial court should have sustained Defendant's objection to this testimony under Rule 401. *See* N.C. Gen. Stat. § 8C-1, Rule 401. Therefore, there would be no need to engage in a Rule 403 analysis regarding prejudicial versus probative value. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2021) ("*Although relevant*, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." (emphasis added)).

But although this evidence should have been excluded, I agree the error was not prejudicial in this case. This one sentence of testimony did not prejudice Defendant considering the substantial amount of evidence tending to show Kaceyn was deceased and regarding the circumstances of his death, and therefore the trial court properly denied Defendant's motion to dismiss. *See generally State v. Milby*,

302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981) ("It is well-established that the burden is on the appellant not only to show error but also to show that he suffered prejudice as a result of the error. The test for prejudicial error is whether there is a reasonable possibility that the evidence complained of contributed to the conviction[.]" (citation omitted)). Therefore, there was no prejudicial error.

Thus, I write separately to concur in result only.